**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**Case No.: 9:23-cv-81150-RLR**

ANDREW TATE AND TRISTAN TATE,

      Plaintiffs

vs.

JANE DOE ET AL.,

      Defendants.

_____/

**DEFENDANT JANE DOE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW, Jane Doe[1], by and through the undersigned counsel, and respectfully moves this Honorable court, under Fed. R. Civ. P. 12(b)(6), to dismiss this case[2], with prejudice, for failure to state claims upon which relief can be granted.

**INTRODUCTION**

This lawsuit is a cruel attempt to further harm two women who dared defy the Tates. Bad faith and untruths are the lifeblood of its allegations. For instance, the Tates' were both charged with human trafficking in continuous form, in Romania, where that crime carries a sentence of 10 years or more, on June 13, 2023.[3] Yet, twice, the Tates' Complaint states that they have never "been charged with the felony of human trafficking by any jurisdiction anywhere in the world."

---

[1] Jane Doe incorporates by reference June Doe, John Doe, and Liam Doe's Motion to dismiss and the arguments set forth therein in their entirety here and join in their Anti-SLAPP counter claim and request for attorney's fees under Fla. Stat. § 768.295(4). [DE 50]

[2] Jane Doe has still not been served and reserves her right to move to dismiss this case under Rule 4(m) if the time for service lapses. Liam Doe reserves the same right for the same reason.

[3] *See* Romanian Indictment; *see also* Luiza Ilie, *Romanian prosecutors change human trafficking charge against Andrew Tate*, REUTERS, June 13, 2023, https://www.reuters.com/world/europe/romanian-prosecutors-change-human-trafficking-charge-against-andrew-tate-2023-06-13/#:~:text=On%20Tuesday%2C%20Romania's%20DIICOT%20anti,of%20up%20to%2010%20years.

Compl. ¶¶ 114, 119 (emphasis added). Such a staggering falsehood regarding the central issue in the Complaint—the Tates' arrest for human trafficking—reveals the true nature of this complaint: witness intimidation.

The Plaintiffs seek to undermine the Romanian charges by weaponizing the U.S. legal system to attack an American witness, Jane Doe, with the most vile, hateful, and irrelevant allegations imaginable—allegations that do not establish legal claims but instead provide social media fodder for public relations and harassment purposes.[4] Of the 57-page Complaint, the Plaintiffs' spend 6 pages hyping themselves, Compl at 6-12, and 30 pages denigrating Jane Doe. *Id*. at 13-42. The majority of the outrageous and scandalous allegations aimed at Jane Doe have absolutely no connection to the claims alleged against her, but they are perfect for the worst kind of social-media clickbait. Which is why the Tates, and their counsel, have repeated the most salacious allegations (some concerning child sexual abuse) on social media and urged the public to read their Complaint at every opportunity.[5] As intended, Jane Doe has faced severe and relentless harassment as a result.

Meanwhile, the Plaintiffs' complaint contains zero allegations that Jane Doe ever spoke to the media or posted allegations about the Tates publicly; **the Plaintiffs' have not even sued her for defamation.** At bottom, the Tates seek to hold Jane Doe liable for expressing fears while in a foreign country to her parents and a friend—*while urging them not to report those concerns*—and cooperating with the Romanian police when they raided the Tates compound. None of the 30 pages of smear, nor the 57 pages of the entire complaint, contain a single allegation that Jane Doe asked the Tates for money, that she threatened them, extorted them, or did anything but try to leave their compound without detection. This Complaint is witness intimidation. It is harassment. Because it was filed in bad faith it should be dismissed in its entirety, with prejudice.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[4] Defendants will argue this more fully in their forthcoming Motion to Strike the "immaterial, impertinent, [and] scandalous" allegations from the Complaint.
[5] Jane Doe incorporates by reference the detailed description of the harassment she has faced from the Tates and their counsel in her Motion for Protection, [DE 29] and Reply. [DE 41].

662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015). Nor are such "mere conclusions . . . entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

## ARGUMENT

I.  <u>Plaintiffs Fail to State a Claim for False Imprisonment Against Jane Doe Because They Failed to Establish Causation or that They were Unlawfully Detained.</u>

Plaintiffs are unable to state a claim for false imprisonment because they cannot demonstrate that they were unlawfully restrained, nor are they able to prove the requisite causation. Compl. ¶ 126–29; *see also Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006). Plaintiffs have failed to establish a cause of action because the detention was committed by Romanian police and was lawful.[6] Further, even if the restraint were *unlawful*, Jane Doe's actions are sufficiently attenuated from the conduct of Romanian authorities that they cannot give rise to legal liability.

Jane Doe cannot "be held liable in tort where [s]he neither actually detained another nor instigated the other's arrest by law enforcement officers." *Archer v. City of Winter Haven*, 846 Fed. App'x 759, 764 (11th Cir. 2021) (citing *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So. 2d 678, 682 (Fla. 1980)). First, Jane Doe did not, as Plaintiffs concede, "actually detain[]" the Tate brothers. *Id.*; *see also* Compl. ¶ 126–29. Second, Jane Doe did not "instigate[] the other's arrest by law enforcement," as she did not contact law enforcement directly or influence their investigation. *Archer*, 846 Fed. App'x at 764.

As a matter of law, an individual cannot proximately cause the detention of another by simply providing information to law enforcement, as Plaintiffs allege. Compl. ¶ 126–29. According to *Pokorny*, it is not enough for a citizen to merely provide information to police or to accuse someone of a crime to instigate an arrest; however, this is precisely what Plaintiffs' Complaint alleges. 380 So.2d at 682; *see* Compl. ¶¶ 89, 91. To have instigated an arrest, a citizen

---

[6] *See* Bucharest Court of Appeals upholding the legality of the Plaintiffs' house arrest and placing them on judicial control. [DE 30]; *see also* Todd Spangler, *Court Rejects Andrew Tate Appeal to Block Asset Seizures in Investigation on Rape, Human Trafficking Charges*, Variety, (Jan. 11, 2023), https://variety.com/2023/digital/news/andrew-tate-loses-appeal-asset-seizures-arrest-rape-human-trafficking-1235485646/.

must have influenced or persuaded the police. *Pokorny*, 380 So.2d at 682. For example, in the case of an arrest, a defendant must have stated to police officers, "Officer, arrest that man!" *Harder v. Edwards*, 174 So.3d 524, 531 (Fla. Dist. Ct. App. 2015).

Here, Jane Doe did not contact the authorities, which Plaintiffs' Complaint admits. Plaintiffs' allegations that Jane Doe sent distressing messages only to *third parties*, who then contacted law enforcement authorities, are insufficient to sustain their claim. *See* Compl. ¶¶ 89, 96; *see also Pokorny*, 382 So.2d 678, 682. As Plaintiffs' Complaint provides no indication that Jane Doe directly contacted—let alone persuaded—the authorities to arrest Plaintiffs, their claim must fail.

Since Jane Doe did not contact the authorities, and even sought to dissuade Liam Doe from calling them, it was impossible for her to "know[] that such confinement w[ould] to a substantial certainty, result from" her contact with a third party. *Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944). Nor does Plaintiffs' Complaint assert any facts to indicate that Jane Doe contacted third parties with the "purpose of imposing a confinement." *Id.* Further, even if Jane Doe had gone directly to the police, her actions are sufficiently attenuated from the conduct of the Romanian authorities, their subsequent investigation, and the judge's ordered incarceration to prevent the required element of causation. Accordingly, their claim for false imprisonment cannot be sustained and should be dismissed.

II. <u>Plaintiffs Have Failed to Establish a Claim for Tortious Interference with a Business Relationship by Jane Doe.</u>

Plaintiffs are "public figures."[7] A claim of tortious interference with their business relationships must satisfy the "actual malice[8]" standard of *N.Y. Times v. Sullivan*. 376 U.S. 254, 279-80 (1964) (internal citations omitted). For the reasons laid out in June, John, and Liam Doe's Motion to Dismiss, the Complaint fails to show that Jane Doe's alleged conduct was motivated

---

[7] *See* Motion and Memorandum to Dismiss Defamation claims by June and John Doe, and Liam Doe demonstrating that plaintiffs are "public figures." Incorporated by reference here.

[8] Plaintiffs have also failed to show express malice. In Florida, express malice can only be proven where there is evidence of a "malevolent intent to harm" or cause "harm accomplished by improper methods." *Hurchalla v. Lake Point Phase I, LLC*, 278 S. 3d 58, 66 (FL Dist. Ct. App. 2019). Jane Doe's intent was the preservation of her own safety, not harming the Plaintiffs. And the complaint presents no evidence that Jane Doe engaged in improper methods. *Id.* (improper methods consist of (1) acts proscribed by statute; (2) acts constituting separate independent torts; and (3) other ill-defined bad acts, such as deliberate misrepresentation).

by "actual malice" against the Plaintiffs, and for this reason, should be dismissed.

Further, Plaintiffs fail to allege the *prima facie* elements of tortious interference with a business relationship as they do not assert (1) the existence of an advantageous business relationship under which Plaintiffs have legal rights; (2) that Jane Doe had knowledge of the business relationship; (3) an intentional and unjustified interference with that relationship; and (4) damages. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). As Plaintiffs have not established any of the prongs required for this claim, this claim is not plausible on its face, thus this cause of action should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

  1. *Plaintiffs Have Failed to Show the Existence of an Advantageous Business Relationship Under Which Plaintiffs Have Legal Rights.*

Plaintiffs fail to comport with the Florida Supreme Court's rule that "an action for tortious interference with a business relationship requires a business relationship evidenced by an *actual and identifiable understanding or agreement*, which in all probability, would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (emphasis added). In their Complaint, Plaintiffs give no details of any business relationships with which Jane Doe allegedly interfered. Their Complaint cites "the Tate Brothers and their various Companies," but never meet the burden of establishing what those "various companies" are, or how they were affected by the alleged acts of Jane Doe, or that these relationships would not have been affected but for the alleged actions of Jane Doe. Compl. ¶¶ 132-134. The legal conclusion, without any factual support, that Plaintiffs have business relationships generally, and "believe" that Jane Doe "sought to interfere" with them is the full level of detail given in the Complaint. *See Iqbal,* 556 U.S. at 679.These conclusions, in accordance with federal pleading standards, should be disregarded because they lack factual support. *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

These allegations also stand at odds with established caselaw. In *Ethan Allen*, the court found that the alleged "business relationship" of 89,000 customers, who had previously shopped at Georgetown Manor and might not again because of the actions of Ethan Allen, did not satisfy this prong because there was not an identifiable agreement with any of those customers. *Id*. at 814-815. In this case, Plaintiffs have provided even less detail than the Plaintiff in *Ethan Allen,*

because they have failed to even identify their "lawful business," or "various Companies" or a prospective partner or client purportedly affected by Jane Doe's actions. Compl. ¶¶ 132-134. By not identifying a business entity or an agreement with any other parties, the assertion that these business relationships exist—let alone that they were adversely impacted[9]—must be considered conclusory, as it is a legal conclusion not substantiated by any facts. *Iqbal*, 556 U.S. at 679. Because Plaintiffs offer no evidence of their business relations with the required specificity, nor specific evidence that such relations were harmed by Jane Doe, this claim should be dismissed.

> 2. *Plaintiffs have Failed to Show Jane Doe had any Knowledge of an Alleged Business Relationship.*

Florida courts have routinely held that, unless the defendant is shown to have had such knowledge, a plaintiff cannot establish a *prima facie* case of tortious interference, as is the case here. *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126 (Fla. 1985); *Smith v. Ocean State Bank*, 335 So. 2d 641 (Fla. Dist. Ct. App. 1976); *see also 1 Florida Torts* § 28.23 (2023). Plaintiffs provide no evidence that Jane Doe had knowledge of an advantageous business relationship between Plaintiffs and their "contractors and associates." Compl. ¶132. Alleging mere belief, does not meet the burden required by this prong of a *prima facie* showing of tortious interference with a business relationship. *See 1 Florida Torts* § 28.23 (2023). Plaintiffs' unfounded belief, even if seemingly reasonable, is insufficient to support an assertion that Jane Doe is shown to have had knowledge of the business relationships at issue and thus cannot satisfy this prong of the *prima facie* case.

> 3. *Plaintiffs Cannot Show Intentional and Unjustified Interference with a Business Relationship by Defendant.*

Having failed to identify any affected business relationship or that Jane Doe knew of any of Plaintiffs' commercial associations, Plaintiffs have also failed to show that Jane Doe acted with legal malice to interfere with any alleged business relationship. *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1222 (Fla. Dist. App. 1980). Plaintiffs do not assert any correspondence or action

---

[9] There is evidence that the Tates gained more notoriety and profited from their arrest in Romania. *See* Sanya Burgess, *Andrew Tate: How the arrest of controversial influencer has impacted his Twitter following*, SKY NEWS, (April 29, 2023) https://news.sky.com/story/andrew-tate-how-the-arrest-of-controversial-influencer-has-boosted-his-twitter-following-12867054#:~:text=His%20popularity%20spiked%20again%20after,a%20million%20followers%20that%20day.

that would impact their business ventures. Plaintiffs, in order to establish interference, must show proximate causation between the alleged interference and any alleged damages. *Id*. at 1224. Plaintiffs fail to allege both (1) any action by Jane Doe—much less any that can be construed as an intentional interference in Plaintiffs' business relationships; and (2) any causal link between the purported actions taken by Jane Doe and any damages suffered by Plaintiffs. *Id*.

Moreover, if a defendant acted not solely with malice, but also to protect their own interests in mind, then the court will not assign liability. *Id*. at 1225. Thus, even if Plaintiffs could demonstrate malice was shown, if it was not the sole reason for Jane Doe's actions, there can be no finding of liability. *Id*. Even in Plaintiffs' alleged description of Jane Doe's correspondence there is no showing of malice, but only an expressed desire to escape a situation of abuse and exploitation. Because Jane Doe's intent was to escape a traumatic situation, Plaintiffs are unable to show that the *only* reason Jane Doe allegedly interfered with this relationship was malice rather than, Jane Doe's motivation to act in her own self-interest. *Iqbal*, 556 U.S. at 679; *Balter*, 386 So. 2d at 1225 (holding that if a defendant acted with their own interests, the court will not assign liability). Absent reliance on these baseless conclusory allegations, Plaintiffs cannot show any plausible entitlement to relief on this prong.

### 4. *Plaintiffs Have Failed to Show Damage to a Business Relationship.*

Plaintiffs do not allege damages related to this claim. Plaintiffs do not identify any specific losses or canceled contracts in the Complaint. The statement that Plaintiffs "suffered damages in an amount to be proven at trial," is a conclusory legal assertion without factual basis. Compl. ¶ 134. *Iqbal*, 556 U.S. at 679. In fact, there is evidence Plaintiffs have profiteered from their detention.

Even if Plaintiffs could show an injury, they offer no evidence of proximate causation between Jane Doe's conduct and conclusory allegations of harm. "[P]roof of a direct interference with [an] agreement . . . is indispensable to the existence of an actionable wrong." *Balter*, 386 So. 2d 1223. Plaintiffs provide no showing that Jane Doe's actions are the factual and proximate cause of the alleged harm to the business relationships. There is a myriad of other reasons that Plaintiffs' business relationships could have dissolved (if they have) entirely unrelated to Jane Doe. For example, Andrew Tate made a name for himself as a self-proclaimed misogynist.[10]

---

[10] Antoinette Radford, Who is Andrew Tate? The self-proclaimed misogynist influencer, BBC (Aug. 4, 2023), https://www.bbc.com/news/uk-64125045 ("In an interview with another

This perception, a result of Andrew Tate's own statements, provides an independent cause for business harm and is neither practically nor legally attributable to Jane Doe.[11] Any of Plaintiffs' public statements, including on social media, could reasonably have caused harm to alleged business relations[12]. In sum, because Plaintiffs have not identified an agreement nor the existence of an interference with such an agreement and do not allege harm, let alone an injury attributable to Jane Doe related to this claim, it should be dismissed.

III.   <u>Plaintiffs Have Not Stated a Claim for Civil Conspiracy by Jane Doe Because They Have Failed to show Jane Doe Committed an Actionable Underlying Tort or Wrong.</u>

Plaintiffs lack the necessary foundation to support a claim of civil conspiracy against Jane Doe. Plaintiffs are unable to show an "actionable underlying tort or wrong." *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (citing *Diamond v. Rosenfeld*, 511 So.2d 1031 (Fla. Dist. Ct. App. 1997)); *see infra* IV, V; *see also supra* I, II. A claim for civil conspiracy "is not the conspiracy itself, but the underlying civil wrong." *Tejera v. Lincoln Lending Servs.*, 271 So. 3d 97, 103 (Fla. Dist. Ct. App. 2019) (citing *Marriott Int'l Inc. v. Am. Bridge Bahamas, Ltd.*, 193 Sp.3d 902, 909 (Fla. Dist. Ct. App. 2015)). As Plaintiffs have failed to meet the pleading standard required for any of the alleged torts, there is no basis for their civil conspiracy claim.

Even if Plaintiffs could establish another tort had been committed, this, on its own, does not support a finding of civil conspiracy against Jane Doe. Plaintiffs offer no evidence of (1) an agreement between two or more parties; (2) intent to commit an unlawful act or to do a lawful act by unlawful means; (3) engaging in some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 9931 So.2d 137, 140 (Fla. Dist. Ct. App. 2006). As Plaintiffs have failed to

---

YouTuber, he said he was 'absolutely a misogynist,' and added: 'I'm a realist and when you're a realist, you're sexist. There's no way you can be rooted in reality and not be sexist.'").

[11] Shanti Das, *Inside the violent, misogynistic world of TikTok's new star, Andrew Tate*, The Guardian, Aug 6, 2022; BBC News, *Andrew Tate was 'coercive', says ex-girlfriend*, (Feb. 8, 2023), https://www.youtube.com/watch?v=J7tUQ2AUccY&t=41s.

[12] Morgan Sung, *Andrew Tate banned from YouTube, TikTok, Facebook, and Instagram*, NBC NEWS, Aug. 19, 2022 ("'We terminated channels associated with Andrew Tate for multiple violations of our Community Guidelines and Terms of Service, including our hate speech policy,' YouTube spokesperson Ivy Choi said on Monday.")

sufficiently plead the elements necessary for civil conspiracy and attempt to pass conclusory statements as factual allegations, this claim should be dismissed.. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'").

1. *Jane Doe Did Not Conspire or Enter into an Agreement with Mary Doe to Defraud Plaintiffs.*

Plaintiffs fail to provide direct evidence that Jane Doe entered into any agreement with Mary Doe to conspire against them. However, "[w]ithout facts to substantiate them," Plaintiffs' allegations "are nothing more than a series of naked assertions, and naked assertions can't withstand a motion to dismiss." *Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga.*, 631 F. App'x 888, 890 (11th Cir. 2015). Plaintiffs both allege that Jane Doe conspired with Mary Doe to "intentionally inflict harm" and "obtain money from [Andrew] Tate by false pretense." Compl. ¶ 139. However, Plaintiffs attempt to mischaracterize communications between the parties and to pass on conclusory assertions as well-asserted factual allegations in support of their claim. Compl. ¶¶ 85–87; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Plaintiffs provide no direct evidence of a conspiracy. First, Plaintiffs concede any alleged conspiracy was unsuccessful, as they indicate in their own Complaint that Jane Doe failed to carry out their conspiracy. Compl. ¶ 88 (referencing Defendants' "failure to execute their conspiracy"). Second, Plaintiffs proffer no direct evidence of a conspiracy. Rather, all of the correspondence to which they cite fails to support their assertions. *See, e.g.*, Compl. ¶ 91 (referencing Jane Doe's message that the "hard thing is getting out of the house"). In none of the excerpted messages do Jane Doe and Mary Doe agree to deceive Plaintiffs into "steal[ing] money" or the like for the purpose of defrauding Plaintiffs. Compl. ¶ 138. Rather, on their face, these text messages demonstrated the steps they took in order to plan their escape from an unsafe environment.

Third, Plaintiffs' insinuations do not provide a sufficient basis for the claim to proceed. Plaintiffs' use of circumstantial evidence also fails to evince that Mary Doe and Jane Doe entered into an agreement to defraud Plaintiffs. Compl. ¶¶ 84–87. Courts have held that a claim of civil conspiracy requires direct evidence and can only be supported by circumstantial evidence "when the inference sought to be created by such circumstantial evidence outweighs all

reasonable inferences to the contrary," a burden Plaintiffs cannot meet. *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (citing *Diamond v. Rosenfeld*, 511 So.2d 1031, 1034 (Fla. Dist. Ct. App. 1997)). In *Raimi*, the plaintiff sued the defendant for conspiring to deprive the plaintiff's stepmother of assets that she left to the plaintiff in her will. The plaintiff alleged that a phone call from the defendant's mother, the stepmother's sister, where she asked the defendant to check in on the stepmother demonstrated an agreement between the defendant and his mother to deplete the stepmother's assets before her passing. *Raimi*, 702 So.2d at 1284. The court rejected this assertion because it did not directly prove an agreement took place between the defendant and his mother to conspire against the stepmother since they were the only ones on the phone call. *Id*. Moreover, the court found that this circumstantial evidence was insufficient to support the finding of an agreement because there were other plausible explanations for the phone call *Id.* Relatedly, Plaintiffs' assertions against Jane Doe also fail for the same reasons. Here, Jane Doe's communications did not contemplate fraud, exploitation, or other tortious conduct against Plaintiffs, and mere communication alone does provide a basis for asserting impropriety. As such, these facts are equally consistent with Jane Doe's and Mary Doe's lawful conduct.

Because courts "are not required to accept as true bare legal assertions supported by mere conclusory statements," these allegations cannot survive a motion to dismiss. *Graveling v. Castle Mortg. Co.,* 631 F. App'x 690, 693 (11th Cir. 2015). Therefore, Plaintiffs have failed to effectively plead that Jane Doe and Mary Doe conspired against them, warranting dismissal. *See Parisi v. Kingston*, 314 So.3d 656, 662 (Fla. Dist. Ct. App. 2021) (dismissing a claim of civil conspiracy for not being "sufficiently clear and specific as to the existence of a civil conspiracy").

### 2. *Jane Doe Did Not Commit an Unlawful Act Nor Carry Out a Lawful Act By Unlawful Means in Furtherance of a Conspiracy.*

Plaintiffs allege only conclusory statements to support Jane Doe carried out an unlawful act or pursued an overt act in furtherance of the alleged conspiracy. Plaintiffs allege that Jane Doe "outline[ed] a systemic plot to deceive" and to "steal money" from them. Compl. ¶ 138. Yet, the Complaint contains no details on the alleged "plot" undertaken by Jane Doe and relies only on this conclusory assertion that Jane Doe engaged in a plot against Plaintiffs. Compl. ¶ 138. It is a cardinal rule that conclusory statements fail to meet the pleading standard by failing to allege

"sufficient factual matter" to sustain a claim. *Iqbal*, 556 U.S. at 678.

Moreover, Florida courts have held that simply alleging a "scheme" without further explanation was an inadequate pleading for a conspiracy. *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Group*, 79 So. 3d 855, 865 (Fla. Dist. Ct. App. 2012). In *Debose*, the plaintiff brought a civil conspiracy claim against the defendant University of Florida Board of Trustees that resulted in the termination of her previous employment and revocation of a future offer. *Debose v. Univ. of South Fla.*, 178 F. Supp.3d 1258 (M.D. Fla. 2016). The court granted the defendant's motion to dismiss because it found the plaintiff failed to sufficiently plead that the defendant engaged in unlawful conduct to sustain a civil conspiracy claim. Importantly, the court explained that the "references to a 'scheme to discredit[] and terminate'" were merely conclusory statements and not well-pled allegations. *Id*. at 1272. The Complaint here alleges similarly conclusory and ill-defined allegations which refer to a plan to defraud Plaintiffs without providing further details on the alleged plan. Compl. ¶ 139.

Jane Doe's alleged text messages exchanged with Mary Doe do not demonstrate an overt act taken to conspire against Plaintiffs. Compl. ¶¶85–88. These text messages are insufficient on their own to constitute the necessary overt act required for a finding of civil conspiracy. Plaintiffs do not identify or describe acts taken in this ill-defined conspiracy. Moreover, they fail to support the assertion Jane Doe carried out an unlawful act by unlawful means. They only support the plausible inference that Jane Doe and Mary Doe planned to take in order to secure their safety and escape undetected. This is further supported in text messages exchanged between Jane Doe and Liam Doe, where she writes to Liam Doe: "there's three other girls besides her and …they are groomers and handlers . . . if they see us leave they call the brothers then brothers call airports and stop us from leaving." Compl. ¶ 36. These text messages demonstrate a desire to leave Plaintiffs through any safe means possible.

    3.  *Plaintiffs Fail to Allege Harm Suffered as a Result of the Alleged Actions Taken by Jane Doe.*

Plaintiffs fail to identify the harm they suffered as a result of the alleged civil conspiracy because they provide no factual allegations regarding their purported losses. The Complaint alleges that Jane Doe "inflicted significant emotional distress" and "economically damaged" Plaintiffs through vague "material losses." Compl. ¶ 139. However, Plaintiffs provide no factual foundation for the alleged "economic and reputational damages." Compl. ¶ 139. As "a formulaic

recitation of the elements of a cause of action will not do," without providing any evidence to support their allegations, Plaintiffs have insufficiently pled this element. *Twombly*, 550 U.S. at 555.

In fact, there is evidence Plaintiffs have profiteered from their detention. As one news outlet reported: "From inside jail the notorious influencer was also able to capitalize on his situation by selling a limited edition t-shirt to celebrate his release on 1 April which is called Freedom, and is emblazoned with a chess piece. In true Tate form the relatively plain garment costs $131 (£104.86) and there are claims he has sold over 1,200 raking in another $150,000 (£120,000)."[13] Evidence that Plaintiffs allegations are not only implausible, but actually false, is evidence properly considered by the Court at this stage. *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) ("A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment.").

IV.   The Complaint Fails to State a Cause of Action for Intentional Infliction Emotional Distress (IIED).

The plaintiffs are "public figures."[14] A claim of intentional infliction of emotional distress on a public figure requires the Plaintiffs plead and prove that Jane Doe was motivated by "actual malice" under New *York Times v. Sullivan*, 376 U.S. 254 (1964). As the Supreme Court stated in *Falwell v. Hustler*, 485 U.S. 46, 56- 57, 108 S. Ct. 876 (1988): "We conclude that public figures… may not recover for the tort of intentional infliction of emotional distress by reason of publications . . . without showing . . . that the publication contains a false statement of fact which was made with "actual malice," *i.e.,* with knowledge that the statement was false or with reckless disregard as to whether or not it was true." (internal citations omitted). Because the Plaintiffs' fail to demonstrate that Jane Doe's statements were motivated by "actual malice", indeed the allegations from other victims and witnesses in the Romanian indictment corroborate

---

[13]Lydia Veljanovski, *Big Brother Star Andrew Tate Earned Millions Online From Vile Views While Behind Bars*, MIRROR (Apr. 14, 2023), https://www.mirror.co.uk/sport/boxing/cult-andrew-tate-still-spreading-29713427 (updated Apr. 21. 2023); *see also* Todd Spangler, *Twitter Starts Paying Some Creators Share of Ad Revenue on Invitation-Only Basis, Including Andrew Tate and Krassenstein Brothers*, VARIETY, (July 14, 2023).
[14] *See* Motion and Memorandum to Dismiss Defamation claims by June and John Doe and Liam Doe, filed the same day as the present Motion, demonstrating that plaintiffs are "public figures." Incorporated by reference here.

Jane Doe's statements[15], the IIED claim should be dismissed.

The "actual malice" requirement aside, to be successful on a claim of IIED in Florida, a plaintiff must show four elements. *Legrande v. Emmanuel*, 889 So. 2d 1991, 994-5 (Fla. Dist. Ct. App. 2004). They are:

(1) The wrong doer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) the conduct caused emotion distress; and

(4) the emotional distress was severe.

*Clemente v. Horne*, <u>707 So.2d 865, 866</u> (Fla. Dist. Ct. App. 1998) (same).

The first prong of the test requires that Jane Doe's conduct be "intentional or reckless". There are no facts in the Complaint meeting this requirement.  She was a very young woman in a foreign country in a situation over her head in which her fears were warranted. Compl. Ex. B [DE 31-4 at 43-71].  Expressing her fears to friends and family was completely reasonable under these circumstances. Nothing in the exchanged message suggests that she was intentionally or recklessly seeking to harm Plaintiffs. On the contrary, they demonstrated that her number one concern was safely leaving the compound. *Id.*

The test also requires her conduct to be "outrageous" which is described in Florida as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal . . . . Liability has been found only where the conduct has been <u>so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"</u>

*Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (emphasis added). The bar is obviously set very high.

The court in *Kraeer Funeral Homes, Inc. v. Noble*, approved a jury instruction for IIED stating, "outrageous and malicious means conduct so extreme in degree as to go beyond all

---

[15] *See generally,* Romanian Indictment. Jane Doe shall file this document immediately upon ruling by the Court on the motion to file it under seal [DE 35]; *see also infra* note 18.

possible bounds of decency, conduct such as would be regarded as atrocious and utterly intolerable in a civilized community or with an entire want of care or great indifference to the rights of others." 521 So. 2d 324, 325 (Fla. Dist. Ct. App. 1988) (per curium).

In evaluating whether conduct is outrageous, "the subjective response of the person who is the target of the actor's conduct does not control . . . Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) (citations and internal quotation marks omitted). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." *Id.* (citations omitted). *See Malverty v. Equifax Info. Services, LLC,* 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019)

1.  *Jane Doe's Statements Are Not Outrageous Conduct*

Jane Doe's alleged statements, to the extent they are described with particularity, fall far short of reaching the high bar for an IIED claim. First, the public record is filled with information and reports linking the Tate Brothers to abusive behavior towards women in the past.[16] Both Tate brothers have boasting publicly about their success "pimping hoes[17]", and teaching others how to set up a successful webcam business.[18]

Next, Jane Doe allegedly connected the Tates with "human trafficking" activity to "family, friends, and other [unidentified] contacts", and these persons "later reported" the "claims" "to the United States Embassy" Compl. ¶ 128.  This is not the kind of statement capable of supporting an IIED claim. Considering their negative public prominence, no one can fairly say that her connecting them with human trafficking to her parents and close friend was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

---

[16] *See e.g.* Miles Klee, *Andrew Tate Was Kicked Off 'Big Brother' in 2016 Amid Rape Investigation*, ROLLING STONE, Jan. 4, 2023, https://www.rollingstone.com/music/music-news/andrew-tate-kicked-off-big-brother-rape-investigation-1234656041/.

[17] *See* EJ Dickson, *Andrew Tate Built an Empire on Bullshit. Here's the Real Story.* ROLLING STONE, March 15, 2023. https://www.yahoo.com/entertainment/andrew-tate-built-empire-bullsh-173212463.html

[18] See e.g., TATE tells the story of his webcam BUSINESS, YOUTUBE (July 1, 2022), https://youtu.be/wSURJ7JChqA?si=hTn_v83rQr51wd3t at 02:11 – 7:08; Tristan Tate: God Mode, YOUTUBE (Jan. 15, 2023), https://www.youtube.com/watch?v=Ao4pvTjGbFY at 00:28-00:47; Andrew Tate Tells His Life Story, YOUTUBE (Jun. 20, 2021), https://www.youtube.com/watch?v=fhUi1htVeJc at 15:48 – 20:45; 37:15- 40:55.

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d at 278. Given their highly publicized reputation this falls woefully short of being "intolerable in a civilized society." *Contrast e.g.*, *Nims v. Harrison*, 768 So. 2d 1198 (Fla. Dist. Ct. App. 2000) (allegations of threats to kill the plaintiff and rape her and all of her children held actionable); *Thomas v. Hosp. Bd. of Dir. of Lee Cty.*, 41 So. 3d 246, 256 (Fla. Dist. Ct. App. 2010) (hospital made knowingly  false statements about decedent's cause of death (to coverup negligence), which came out on day of funeral, requiring interruption of funeral so that body could be  returned for a second autopsy, held to meet the IIED standard); *see also Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) ("Liability . . . does not extend to . . . indignities . . . or false accusations.").

2.   *The Complaint Fails to Allege Injury with  the Required Specificity.*

While the Tates allege they experienced "insomnia, weight loss, chest pains, and other physical ailments," they fail to "state <u>when</u> these symptoms started as required by Florida law. Compl. ¶ 144; *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). This is no small thing. "[T]he plaintiff must suffer the complained-of mental distress and accompanying physical impairment 'within a short time' of the incident." *Id.* (quoting *Eagle–Picher Indus., Inc. v. Co*x, 481 So.2d 517, 526 (Fla. Dist. Ct. App. 1985*)*) ("<u>The plaintiff must suffer</u> the . . . mental distress and accompanying physical impairment 'within a <u>short time'</u> of the incident.") (emphasis added).  The failure to state <u>when</u> the symptoms started alone renders the claim fatally defective. *See also Kendron v. SCI Funeral Servs. of Fla.*, *LLC*, 230 So. 3d 636, 638 (Fla. Dist. Ct. App. 2017) (emotional and physical distress must be "'within a short time' of the incident."). There is no mention in the complaint whether the claimed ailments occurred within a "short time" or sometime after incarceration, or some time even later.  In *Kim v.  Jung Hyum Chang*, the evidence was insufficient to establish severe distress as there was no discussion of how long the stressful incident affected plaintiff, whether plaintiff suffered symptoms of anxiety or depression, or if professional help was sought in order to make a reasonable inference of severe emotional distress. 249 S0.3d 1300, 1305-1307 (Fla. Dist. Ct. App. 2018).

Plaintiffs claim general "emotional anguish" without further description, alleging that it led to "insomnia, weight loss, chest pain" Compl. ¶ 144. These allegations of injury are woefully insufficient as the *Kim* court's description of the "severity" requirement demonstrates: "The objective question is whether the emotional distress the plaintiff suffered was so intense and so

long-lasting that no reasonable person should be expected to endure it." *Id.* [internal citations omitted]. "[I]nsomnia, weight loss, [and] chest pain" do not meet this standard.

The Complaint also fails to describe, as it must, the <u>duration</u> of the symptoms, or even whether they flowed from the emotional distress. *Id.* at 1309. We have no idea, *e.g.,* if they were "intense or long lasting" and no way to infer whether the "distress was too much for a reasonable person to be expected to bear." The *Kim* court compared *Peterson v. City of Plymouth*, 945 F.2d 1416, 1421 (8th Cir. 1991) where allegations of "illness, sleeplessness, humiliation, anxiety, mental anguish, and loss of reputation" were insufficient to support a claim of IIED. Compare plaintiffs' allegation of "insomnia, weight loss, chest pain."[19] Compl.¶ 144.

The complaint offers no details of the symptoms listed. Compl.¶ 144. We do not know if they were hospitalized or even sought medical assistance, and if so, for how long. This information is required to measure whether the specific injury was sufficiently severe to meet the test and to determine whether it was caused by the defendant. *Kim*, 249 So. 3d at 1305.  (In assessing whether emotional distress is actually severe, the <u>intensity</u> and <u>duration</u> of distress will be considered).

>    *3.  The Claim Must Be Dismissed for Lack of Causation*

Curiously, there is no cause of action alleging liability for Jane Doe's purported statements directly to Romanian law enforcement. The closest the complaint comes to this is alleging that the Tates suffered due to Jane Doe's statements to unidentified "third parties" that caused the Tates to be subject to a "criminal investigation . . . which directly led to incarceration . . . ." Compl. ¶ 143. The "third parties" are not named.  Only Jane Doe's parents and Liam Doe are identified by name as recipients of Jane Doe's statements throughout the complaint, meaning this claim can only apply to statements made to them.

This results in an obvious problem relative to causation, a required element. *Legrande v. Emmanuel*, 889 So. 2d at 994-5 ("the conduct caused emotional distress"). Further, the claimed injuries must be "produced as a result of <u>a deliberate and calculated act performed with the</u>

---

[19] Additionally, the Tates often boast about how well they are doing and how physically fit they are. *See e.g.,* @Cobratate, X, https://twitter.com/hu4_official/status/1704480318315544604; https://twitter.com/Cobratate/status/1702978466726006795; https://twitter.com/Cobratate/status/1648647136135856132; https://twitter.com/Cobratate/status/1703369007179403698; https://twitter.com/Cobratate/status/1702321174670422067.

intention of producing such an injury by one knowing that such act would probably-and most likely-produce such an injury". *Metropolitan Life Ins. Co. v McCarson*, 429 So. 2d 1287, 1291 (Fla. Dist. Ct. App. 1983) (emphasis added). Considering this, it is not plausible to assert a causal chain from Jane Doe's sharing her situation with Liam Doe and her parents, and the months later criminal incarceration of the Tates by a Romanian judge.[20]  In sharing her situation, Jane Doe could not know that Liam Doe would seek out his commanding officer and request his direction on how to handle the situation. Jane Doe could not know the commanding officer would advise Liam Doe to contact the U.S Embassy in Romania. When she learned this was his intent, she attempted to wave him off from contacting the Embassy. Compl. ¶¶ 91, 96. She could not anticipate that despite her direct request to the contrary that he would nevertheless proceed to contact the Embassy. The complaint does not allege what precisely Liam Doe communicated to the Embassy. We are left to guess. Jane Doe could not have known that the U.S. Embassy—or the person taking the call—would immediately contact Romanian law enforcement. The Complaint fails to allege what precisely was communicated by the Embassy representative to Romanian law enforcement, so we are left to guess what additional information may have been communicated. We do not know if the raid by Romanian police was triggered by this call alone or whether the call came in on top of a pre-existing investigation that warranted the large raid and its timing.[21] Months later, Jane Doe could not have known that a judge, weighing the evidence, would order the Tates to be immediately incarcerated pending charges. We don't know what information the court considered as there was far more evidence than a single tip from the U.S. Embassy[22].  Jane Doe could not have known the Plaintiffs would experience the alleged

---

[20] CT Jones, *Men's Rights Influencers Andrew and Tristan Tate Detained in Romania on Suspicion of Human Trafficking*, ROLLING STONE, December 29, 2022, https://www.rollingstone.com/culture/culture-news/andrew-tate-tristan-tate-detained-romania-human-trafficking-1234654248/ ("The villa was first raided in April 2022, after Romanian police received a report of a woman being held against her will at the home . . . . At the time, no arrests were made, but authorities said the investigation was ongoing . . . .").

[21] *See* Lucy Williamson, *Andrew Tate prosecution files reveal graphic claims of coercion ahead of trial,* BBC, Aug. 23, 2023 ("The case file summary, containing hundreds of pages of testimony and transcripts . . . includes testimony from . . . several women who lived in a building near the Tates' house on the outskirts of Bucharest. The women allege that income from their online pornographic content was controlled by the defendants, along with some accounts and passwords.")

[22] *See supra* note 14.

injury they now claim. At bottom, the alleged nexus between her statement to Liam Doe on the one hand, and the Tate's incarceration on the other, are far too attenuated to satisfy the causal requirement. *McCarson*, 429 So. 2d 1287.

V.   Plaintiffs' Fail to State a Claim for Negligent infliction of Emotional Distress (NIED) Because Their Allegations Do Not Meet the Elements of Florida's Required "Impact Rule."

To successfully plead NEID a plaintiff must allege that four elements are met. These are: "(1) . . . physical injury; (2) . . . caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Corbin v. Prummell*, 2:22-CV-394-JES-KCD, 2023 WL 1967574, *14 (M.D. Fla. Feb. 13, 2023). The Eleventh Circuit employs the "zone of danger test" which allows recovery if a plaintiff sustains a physical impact or is placed in an immediate risk of physical harm by a defendant's negligent conduct. *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1271 (S.D. Fla. 2016).

Florida follows the "impact rule." *Id.* "In essence, the impact rule requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." *Id.* (citing *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995)). "[T]he underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." *Id.* (citing *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995) (citation omitted)).

"In Florida, the prerequisites for recovery for negligent infliction of emotional distress differ depending on whether the plaintiff has or has not suffered a physical impact from an external force." *Malverty* 407 F. Supp. 3d at 1265 (internal quotations and citations omitted). As the Florida Supreme Court explains,

> If . . . the plaintiff has not suffered an impact, the complained-of mental distress must be manifested by physical injury, the plaintiff must be involved in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment within a short time of the incident.

*Willis v. Gami golden Glades, LLC,* 967 So. 2d 846, 850 (Fla. 2007). "An allegation of mere psychic trauma is not enough to sustain a claim for negligent infliction of emotional distress."

*Malverty*, 407 F. Supp. 3d at 1265. Under this standard, the Tates' claim for NIED fails for several reasons.

First, the Tates did not "suffer a physical injury" as required by the "impact rule". *See e.g. Lotierzo v. Barbarito*, 356 So. 3d 846, 848 (Fla. Dist. Ct. App.  2023) ("[B]efore a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.") (internal citations omitted); *see also Thomas v. OB/GYN Specialists of Palm Beaches, Inc*., 889 So. 2d 971, 972 (Fla. Dist. Ct. App. 2004) ("According to the Supreme Court of Florida, the impact rule is alive and well."). This doctrine is long settled in Florida since the seminal case *International Ocean Tel. Co. v Saunders*, 14 So. 148, 32 Fla. 434 (1883) ("mental anguish" is not recoverable in a case of infliction of emotional distress). While the Complaint makes the conclusory assertion that the Tates suffered "both psychological and physical harms," it does not say whether the emotional distress "flows" from physical injuries as required by *Lotierzo*, *supra*. This is a fatal defect under Florida's impact rule.

Furthermore, there was no physical "impact" as required. Plaintiffs were sentenced by a judge to incarceration in the ordinary course of judicial business. This occurs thousands of times every day. To argue that this amounts to an "impact" triggering a NIED would have massive unforeseen negative ramifications and is simply untenable. In fact, this case is remarkably similar to *Malverty, supra*. There, the plaintiff's claim for negligent infliction of emotional distress was dismissed where the plaintiff suffered no physical impact, as here, but argued that she "suffered physical injury in the form of increased blood pressure, heart problems, sleeplessness, anxiety, and loss of appetite." 407 F. Supp. 3d at 1265-1266. *Compare* Compl. ¶ 148 ("insomnia, weight loss, chest pains" and other unspecified "physical ailments"). The *Malverty* Court held that this was not sufficient to state a claim for NIED: "allegations of psychic trauma is not enough to sustain a claim for negligent infliction of emotional distress." *Id*. at 1266. And rejected the "contention that… increased blood pressure satisfies the requisite physical injury." *Id*. (internal citations omitted). The Tates' similarly vague allegations of harm, e.g. "mental suffering," "emotional anguish," "insomnia, weight loss, chest pain," Compl. ¶ 148, fail to satisfy the "requisite physical injury" for a claim of NEID, as in *Malverty. Id.*

Second, the complaint fails to allege any facts to support a finding that Jane Doe acted negligently, a required element. *Corbin*, *supra*. Everything she did was perfectly reasonable based

on her circumstances. She was fearful about her situation at the Tate's compound, particularly in connection with perceived human trafficking and in freely leaving the property. Comp;. ¶¶ 89, 91-92. She worked out a plan to sneak away without notice. *Id*. She reached out to Liam Doe, a friend in the U.S., and informed him of her situation. Jane Doe acted as a reasonable person would under like circumstances and no conclusory characterizations to the contrary can change this.

Third, there is no allegation that Jane Doe "had a duty to protect" the Tates "from a particular injury." *Tello v. Royal Caribbean Cruises, Ltd.,* 939 F. Supp. 2d 1268, 1275 (S.D. Fla, 2013) (allegation of a duty to protect required). In fact, lack of allegations aside, she had absolutely no duty to protect the Tates from arrest and incarceration. *E.g.*, *Malverty*, 407 F. Supp. 3d at 1265. The *Malverty* court dismissed an NIED claim because the plaintiff was not in the zone of danger, reasoning the zone of danger test requires the plaintiff to be "placed in immediate risk of physical harm by defendant's negligent conduct." *Id.* Here, if she had any duty, it was not to protect the Tates, it was to protect herself and perhaps Mary Doe, who was being trafficked. Compl. Exhibit B p. 5-10, 24, 34 ("They will kill us"; "She's (Mary Doe) a human trafficking victim"). Since there was no duty there can be no breach. And, assuming *arguendo* there was a breach, any argument that it caused the Plaintiff's remote injury is specious. Finally, it is untenable to contend that, given the Tates activities, Jane Doe was negligent by placing them in a zone of danger because of her WhatsApp text to Liam Doe. The Tates have themselves to blame for their legal difficulties.

Fourth, Jane Doe was not "involved in some way in the event causing the negligent injury to another." *Corbin v. Prummell*, 2:22-CV-394-JES-KCD, 2023 WL 1967574, *14 (M.D. Fla. Feb. 13, 2023). The Romanian judge ordered the Tates incarceration months after Liam Doe notified the Embassy of Jane Doe's situation. While Jane Doe was not negligent, it also cannot plausibly be contended that communicating with Liam Doe constituted involvement in the "event causing the negligent injury" as required by Florida law. There was an investigation and evidence before the court ordering the incarceration. The Tates problems can hardly be attributed to a tip to the police from the U.S. Embassy. For these reasons, the claim for negligent infliction of emotional distress should be dismissed.

## CONCLUSION

For the reasons state above, Jane Doe respectfully requests this Court to dismiss all of the Plaintiffs' claims against her, with prejudice and grant Defendants' Anti-SLAPP counterclaim, and grant Defendants' request for attorneys' fees pursuant to Fla. Stat. § 768.295(4).

Respectfully Submitted,

Date: September 24, 2023

By:  /s/ Danielle Bianculli Pinter
     Danielle Bianculli Pinter
     Fla. Bar No. 120441
     Benjamin W. Bull*
     Peter A. Gentala*
     Christen M. Price*
     Victoria Hirsh*
     **National Center on Sexual Exploitation**
     1201 F. St., NW, Suite 200
     Washington, DC 20004
     dpinter@ncoselaw.org
     bbull@ncose.com
     pgentala@ncoselaw.org
     cprice@ncoselaw.org
     vhirsch@ncoselaw.org
     Telephone: 202-393-7245

     Jennifer Safstrom**
     Fla. Bar No. 1019759
     **First Amendment Clinic**
     **Vanderbilt Law School**
     131 21st Ave South
     Nashville, TN 37203-1181
     (615) 322-4964
     jennifer.safstrom@vanderbilt.edu
     Vanderbilt First Amendment Clinic Students,
     including Juliana Strobing, substantially assisted
     with the preparation of this brief.

     Christian W. Waugh [FBN 71093]
     Mary A. Norberg [FBN 1032028]
     Sofie Bayer [FBN 1039616]
     **WAUGH PLLC**
     201 E. Pine Street, Suite 315
     Orlando, FL 32801
     cwaugh@waugh.legal
     mnorberg@waugh.legal
     sbayer@waugh.legal
     Telephone: 321-800-6008
     Fax: 844-206-0245

*Attorneys for Defendants*

\*Admitted *pro hac vice*.
\*\*Request for admission filed.

## Certificate of Service

I hereby certify that on September 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Thomas Maniotis
Equity Legal, PLLC
5201 Blue Lagoon Dr., Flr. 8
Miami, FL 33126
321-313-8642
tamaniots@equitylegal.net

Joseph D. McBride
The McBride Law Firm, PLLC
99 Park Avenue, 6th Flr.
New York, NY 10016
917-757-9537
Jmcbridelawnyc.com

*Attorneys for Plaintiffs*