**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

ANDREW TATE & TRISTAN TATE,    )
                                    ) Case No: 23-cv-81150-RLR
        Plaintiffs,          )
                                    )
v.                                     )
                                    )
JANE DOE, et al.,               )
                                    )
        Defendants.       )

---

**DEFENDANT MARY DOE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

BY:   **LAFFEY, BUCCI & KENT, LLP**

      Jillian P. Roth, Esq., FBN 1036053
      1100 Ludlow St., Suite 300
      Philadelphia, PA 19107
      Office: (215) 399-9255
      Fax: (215) 241-8700
      Email: jroth@laffeybuccikent.com

## INTRODUCTION

Defendant Mary Doe ("Ms. Doe"), by and through her counsel, Laffey, Bucci & Kent, LLP, hereby moves to dismiss Plaintiffs' Amended Complaint [Docket No. 1-1] (the "Complaint") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2), 12(b)(5)[1] and 12(b)(6), seeking dismissal of Plaintiffs' Andrew Tate and Tristan Tate claims against her, in their entirety. Plaintiffs' claims are subject to dismissal because Plaintiffs have failed to meet their burden to establish that this Court may exercise lawfully jurisdiction against Defendant, where there is no basis under Florida's long arm statute and the exercise of jurisdiction would violate Due Process, and where Plaintiffs have failed to state a claim upon which relief may be granted.

First, Ms. Doe is not subject to personal jurisdiction in Florida. Ms. Doe is Romanian and Moldovan citizen residing in the United Kingdom. The only allegation in Plaintiffs' Complaint regarding Florida is the allegation that Defendant Jane Doe sent text messages to family in Florida to tell them of the alarming and dangerous behavior of the Tate brothers. In a blatant effort to flout the Romanian government's charges and intimidate and retaliate against their victims, the Tates have improperly dragged Ms. Doe into an American court with zero regard for the rules of jurisdiction. Where Ms. Doe and the facts alleged in the Complaint have no connection with the State of Florida, Ms. Doe is not subject to personal jurisdiction in Florida.

Second, even if Ms. Doe was subject to personal jurisdiction in Florida, which is denied, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. Plaintiffs

---

[1] Although the time for service of process under Rule 4(m) has not yet lapsed, Defendant includes this defense in her Motion to Dismiss because under Rule 12, a defendant must raise any challenge to the sufficiency of service of process in the first response to the plaintiffs' complaint (either the pre-answer motion to dismiss or the motion to dismiss), lest the defense be deemed waived. See Fed. R. Civ. P. 12(b); See Fed. R. Civ. P. 12(b); *see also Biopharma v. Johannesburg*, 553 F.3d 1351 (11th Cir. 2008) (Under Rule 12, a defendant must raise any challenge to the sufficiency of service of process in the first response to the plaintiffs' complaint).

fail to assert *any* facts to show victim Defendant Mary Doe took any action or made any statements which could fathomably support their claims. Any damages asserted in their Complaint are instead the result of the Tates' own criminal behavior and public boastings about making wealth through their mistreatment and targeted manipulation of women. Further, any claim of damages in their Complaint is undermined by the Tates' own behavior and public statements since the filing of this Complaint.[2]  As aptly pointed out and discussed publicly by counsel for Plaintiffs, Plaintiffs' Complaint is "written like a screen play," "reads like a really really good book," is "action-packed" and contains "juicy tidbits of information," however, Plaintiffs' Complaint is improper, frivolous, legally insufficient and utterly fails to assert any non-conclusory facts that could remotely be construed to support their upon which they are entitled to relief. As such, all claims asserted as to Defendant Mary Doe must be dismissed with prejudice.[3]

## STATEMENT OF FACTS

Plaintiffs' lawsuit against Defendants seeks damages exceeding $5,000,000, and asserts claims of False Imprisonment (Count IV), Civil Conspiracy (Count VII), Intentional Infliction of Emotional Distress (Count VII), and Negligent Infliction of Emotional Distress (Count VIII) against Defendant Mary Doe. As aptly noted by the Court, "Plaintiffs seek to prove that Defendants' allegations underlying the [Romanian] criminal investigation are untrue" [Doc. No. 46, p. 1], and this forms the basis for Plaintiffs' claims against Defendants.

---

[2]   *See*   @Cobratate   ("Andrew   Tate"),   X   (September   17,   2023,   7:23   AM), https://x.com/Cobratate/status/1703369007179403698?s=20 ("*Just bought my chick a Lambo bought myself a Pagani Utopia now having a smoke before I continue being the most famous and relevant man alive...*"); @CobraTate, X https://x.com/Cobratate/status/1696186347592045038?s=20  (Post: "*God has truly blessed me. If the price of a little bit of jail or whatever future hardship comes my way. I will accept it all with a smile and a praise. Alhamdulilliah.*" Video: "*DIICOT came to my house, busted in, took all my cars, including my GT4 RS. They didn't know I had a spare. I'm that guy. I'm so cool, I have a spare of everything. 'Oh they took all his diamond watches.' Got spares. 'Took all his cars.' Got spares. 'Took all his hoes or his hoe left.' Got a new one. So the coolest thing about my current driveway is not that I have cars on the drive, it's that they're exact duplicates of the cars they took.*" at :44-1:05.
[3] *See* @McBrideLawNYC, X (July 21, 2023, 10:40 PM), https://twitter.com/mcbridelawnyc/status/1682581350396641280?s=46

The remainder of Plaintiffs' 57-page Complaint is threadbare as to facts alleged regarding Ms. Doe. Plaintiffs assert that Mary Doe is a woman who was invited to become a regular visitor at the Tate Estate and then maliciously accused the Brothers of horrible crimes. Compl. at ¶35. Plaintiffs assert that Mary Doe was bored with the Tates and Jane Doe convinced her to "go along with Jane Doe's new scheme to defraud the Tate brothers and ultimately accuse them of human trafficking and other grave crimes." Compl. at ¶84. Plaintiffs then point to alleged messaged between the women, purporting to show the women attempting to defraud the Tates of money, meanwhile admitting that the Tates did not actually give the women any money. Compl. at ¶¶85-88.[4] Romanian police raided the home where the women were staying and escorted Jane Doe and Mary Doe from the home, away from the Tates. Compl. at ¶100. Plaintiffs Andrew Tate and Tristan Tate were subsequently investigated and arrested for human trafficking and other related criminal charges. Compl. at ¶103. *See also,* the Romanian criminal indictment as to Andrew Tate and Tristan Tate.[5]

Plaintiffs' Complaint is devoid of any facts involving Mary Doe that could support their claims. Further, the opportunity to amend their Complaint cannot plausibly cure these deficiencies; a foreign citizen's testimony to Romanian criminal investigators about her abuse and trafficking at the hands of Andrew Tate does not form the basis for any legal claims under Florida law.

**ARGUMENT**

**I.   PURSUANT TO FRCP 12(b)(2), DEFENDANT MARY DOE IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE STATE OF FLORIDA**

---

[4] None of the purported messages contained in the Plaintiffs' Complaint, or accompanying Exhibits, have been properly authenticated, nor are they self-authenticating, therefore Defendant reserves her right to object to them in future pleadings, if necessary.
[5] Defendant will file the Romanian Indictment immediately upon this Court's order on Defendants' Motion to file the Romanian Indictment under seal. [DE 35].

"In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine ''whether the allegations of the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Const*., N.V., 598 F.3d 802, 808 (11th Cir. 2010) (citations omitted). Where "the only support in the record for [Plaintiff's] argument is the complaint, [the court] must of necessity determine whether it states a cause of action in tort, in order to determine jurisdiction." *8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co*., 638 So.2d 149, 151 (Fla. 4th DCA 1994).

Plaintiffs have failed to meet the threshold burden of demonstrating that this Court has jurisdiction over Defendant Mary Doe in this matter. The forum of Florida lacks personal jurisdiction over Defendant Mary Doe, a resident of the United Kingdom who has not engaged in any acts in Florida, has never set foot in the state of Florida, and has committed no tortious conduct, let alone in Florida or the United States. *See* Declaration of Mary Doe, attached hereto as Exhibit A. A court cannot hear a case against a defendant without personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 127-128 (2014); *see also Crawford v. F. Hoffman-La Roche Ltd*., 267 F.3d 760, 764 (11th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction.")

**A. Rule 12(b)(2) Standard of Review**

Plaintiffs, seeking the exercise of personal jurisdiction over nonresident (and foreign national) Defendant Mary Doe, bear the initial burden of pleading enough facts to make out a *prima facie* case for personal jurisdiction. *United Tech Corp. v. Mazer,* 556 F.3d 1260, 1274, (11th Cir. 2009). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a *prima facie* case of jurisdiction over the movant, nonresident defendant." *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th

Cir. 1988). A *prima facie* case requires enough evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The court must accept as true all facts alleged in the Complaint if they are uncontroverted by the defendant's affidavits. *Id.* at 1514. "When a non-resident defendant raises a meritorious defense to personal jurisdiction through affidavits, documents or testimony, the burden shifts [back] to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (quotation marks omitted).

Federal courts must guarantee that personal jurisdiction is in accordance with both the long-arm statute of the forum state and with federal due process requirements. *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379 (S.D. Fla. 2014). The Court's process is two-fold:

> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, we consider the jurisdictional question under the state long-arm statute. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'

*Madara*, 916 F.2d at 1514 (internal quotation marks and citations omitted) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs here have utterly failed to lay the required jurisdictional foundation in this matter, and the Complaint must be dismissed.

## B. Plaintiffs Have Failed to Meet Their Burden of Demonstrating Jurisdiction Under Florida's Long-Arm Statute, § 48.193

This Court must first determine whether a Florida court could exercise jurisdiction over Defendant Mary Doe under Florida's long arm statute. Fla. Stat. § 48.193. Plaintiffs do not cite any portion of Florida's long-arm statute that would confer jurisdiction upon a court in Florida, and do not allege any conduct by Mary Doe in the State of Florida, let alone tortious conduct. Doc. No. 1-1, ¶¶7-12.

Regarding general jurisdiction, Florida's long arm statute states: A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity. Fla. Stat. § 48.193.

Plaintiffs have failed to even attempt to demonstrate that Defendant Mary Doe has been engaged in substantial and not isolated activity within the State of Florida. Doc. No. 1-1, ¶¶7-12. In fact, Defendant Doe has engaged in *no* activity in the state of Florida. *See* Declaration of Mary Doe, attached hereto as Exhibit A. Plaintiffs have failed to establish any basis for general jurisdiction against Defendant Mary Doe under Fla. Stat. § 48.193, and none exists.

Plaintiffs have also failed to prove any statutory basis for specific jurisdiction over Defendant Mary Doe. Although § 48.193(1) addresses specific jurisdiction and permits jurisdiction over defendants who engage in certain enumerated acts which give rise to the particular litigation, Plaintiffs here have failed to plead or demonstrate a single basis to exercise jurisdiction against Defendant. *See* Fla. Stat. § 48.193(1); Doc. No. 1-1, ¶¶7-12.

Moreover, under Florida law, any alleged tort that forms the basis of a claim must have caused injury to the Plaintiffs in Florida. *L.O.T.I. Group Productions v. Lund*, 907 F. Supp. 1528, 1532 (S.D. Fla. 1995). It cannot be disputed that Plaintiffs were arrested incarcerated in Romania, not Florida. Accordingly, any injury that flowed from such imprisonment would have also occurred in Romania, not Florida.

Plaintiffs make *no* jurisdictional allegations regarding Mary Doe. Doc. No. 1-1, ¶¶7-12. Doc. No. 1-1, ¶8. Plaintiffs' jurisdictional allegations are facially deficient. Tellingly, Plaintiffs' Complaint is devoid of any statutory basis under Florida's long arm law for jurisdiction against

Defendant Mary Doe. None exists. This matter must be dismissed against Defendant Mary Doe for lack of personal jurisdiction.

### C.  The Exercise of Personal Jurisdiction Over Mary Doe Would Violate Due Process and Offend Traditional Notions of Fair Play and Substantial Justice

Because Plaintiffs have failed to establish that any basis for jurisdiction exists against Mary Doe under Florida's long-arm statute, no further inquiry is necessary by this Court and the matter must be dismissed on this basis alone. *See Trump v. Clinton*, 626 F. Supp. 3d 1264 (S.D. Fla. 2022) (where a court determines that there is no basis to assert specific jurisdiction under Florida's long-arm statute, the court need not reach whether the exercise of jurisdiction would satisfy Due Process). Dismissal is nevertheless warranted because Plaintiffs have also failed to satisfy the minimum contacts requirement of the Due Process Clause of the U.S. Constitution. *See Smith v. Poly Expert, Inc*., 186 F. Supp. 3d 1297, 1300 (N.D. Fla. May 16, 2016) (a court may exercise personal jurisdiction over a defendant only if both prongs of the personal jurisdiction analysis are satisfied, Florida's long arm statute and federal constitutional due process).

To comport with the Due Process Clause of the Fourteenth Amendment, the Court must ensure that the Defendant has sufficient "minimum contacts" with Florida "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp*., 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). The Eleventh Circuit "operationalized the doctrine into a three-part test wherein the court considers": whether the plaintiff's claims arise out of or relate to the defendant's contacts with the forum; whether the nonresident defendant has purposefully availed itself of the forum; and whether applying personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Sims v. BMW of N. Am.*, 6:22-cv-1685-PGB-EJK (M.D. Fla. Aug. 16, 2023) (citing *Knepfle v. J-Tech Corp.*, 419 F. Supp.3d 1218, 1288 (M.D. Fla. 2019).

As noted *supra*, Plaintiffs have failed to plead that Mary Doe, a Romanian and Moldovan citizen who permanently resides in the United Kingdom, "purposefully directed" activities at the forum of Florida, much less any alleged injuries that "arise out of or relate to" those activities. *Burger King v. Rudzewicz*, 471 U.S. 461, 472 (1985). Defendant Mary Doe could not have foreseen that cooperating with the Romanian criminal investigation would result in an effect or injury in the state of Florida. *See id.* at 472 (Holding that the Due Process Clause requires that a Defendant have "fair warning" that a particular activity may subject her to the jurisdiction of the forum).

Plaintiffs attempt to muddy the waters with scurrilous allegations in their Complaint against Defendants that do reside in Florida. However, "[d]ue process requires that a defendant be haled into court in a forum State based *on [her] own* affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [s]he makes by interacting with other persons affiliated with the State." *Burger King*, 471 U.S. at 475 (emphasis added). Further, the Eleventh Circuit has held that such conduct would not be enough to satisfy the minimum contacts requirement under the Fourteenth Amendment. *Sun Bank, N.A. v. E.F. Hutton Co., Inc.*, 926 F.2d 1030 (11th Cir. 1991) (Holding that several telephone calls and mail communications between the Florida plaintiff and nonresident defendant in which the defendant made fraudulent representations which caused injury to plaintiff were not sufficient to qualify as "minimum contacts to satisfy Due Process.").

*The Assertion of Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice*

However, Plaintiffs' Complaint also fails because the Court's exercise of jurisdiction against Defendant Mary Doe would offend traditional notions of fair play and substantial justice.

*See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1024 (2021) citing *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)).

This final element allows the Court to consider: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). Here, Defendant Mary Does has, by way of declaration, affirmed that litigating this dispute in Florida is unduly costly and burdensome. Florida has no interest in adjudicating a dispute which occurred in Romania by Plaintiffs that reside in Romania, who are not citizens of Florida, who suffered no injury in Florida, and are currently awaiting trial by the Romanian government for human trafficking, rape, and organized crime. As to the third *Licciardello* factor, proceeding in Florida would certainly allow Plaintiffs convenient and effective relief, however, it is clear through the social media accounts of the Tate brothers and their attorneys that the relief they seek of this Court is not actually $5,000,000 from judgment-proof defendants, but actually to: intimidate the victim-Defendants from participating in the Romanian prosecution; to retaliate against the women by publicly humiliating them and inciting their army of Twitter trolls to harass, threaten, and abuse them; to use this "action-packed"[6] lawsuit to further perpetuate their vile misogynistic rhetoric and be a vehicle they can drive for more controversy-fueled publicity. As such, fair play and substantial justice demands that the Court decline jurisdiction, lest Due Process be offended.

## II.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AS TO MARY DOE UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP 12(b)(6)

---

[6] *See* @McBrideLawNYC, X (July 21, 2023, 10:40 PM), https://twitter.com/mcbridelawnyc/status/1682581350396641280?s=46

Even if Defendant Mary Doe was subject to personal jurisdiction in Florida (which she is not), Plaintiffs' Complaint fails to state a claim upon which relief can be granted because it contains no well-pled facts that remotely form the basis for their claims. As a result, Plaintiffs' Complaint should be dismissed in its entirety.

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* A complaint's factual allegations must be accepted as true for purposes of a motion to dismiss, but this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See Malverty v. Equifax Info. Servs*, *L.L.C.*, 407 F. Supp. 3d 1257, 1262-63 (M.D. Fla. 2019) (quoting *Iqbal*, 556 U.S. at 679). Additionally, a complaint will not suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

### B. Plaintiffs' Complaint Fails to State a Claim of False Imprisonment Against Defendant Mary Doe

Plaintiffs first claim levied against Defendant Mary Doe, False Imprisonment (Count IV), blatantly fails as a matter of law. Under Florida law, "[f]alse imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." *Johnson v. Weiner*, 155 Fla. 169, 19 So. 2d 699, 700 (1944). To state a cause of action for false imprisonment, the plaintiff must establish : "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th Dist. Ct. App. 2015) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th Dist. Ct. App. 2006)). The tort's purpose is to protect personal freedom of movement by curtailing "detention without color of legal authority," which "occurs when 'there is an improper restraint [that] is not the result of a judicial proceeding.'" *Card v. Miami–Dade Cnty. Fla.,* 147 F.Supp.2d 1334, 1347 (S.D.Fla.2001) (quoting *Jackson v. Navarro,* 665 So.2d 340, 341–42 (Fla. 4th DCA 1995)); Dan B. Dobbs, *The Law of Torts* § 36, at 67 (2000).

First, as a threshold matter, Plaintiffs' have failed to establish three of the four elements required to state a claim for false imprisonment—that their imprisonment was unlawful, without legal authority or 'color of authority', and unreasonable and unwarranted under the circumstances. *Harder v. Edwards*, 174 So. 3d 524 at 530. Plaintiffs' legal conclusion that they were "unlawfully incarcerated and wrongfully detained" is not a fact the Court must accept as true. *Turner v. Williams*, 65 F.4th 564 at 577 (11th Cir. 2023)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions on consideration of a motion to dismiss for failure to state a claim"). Nothing pled in Plaintiffs' Complaint establishes that their imprisonment was "unlawful"; in fact, the Tates establish the opposite, that their restraint

was the result of a judicial proceeding. In their Complaint, the Tates point out that in July 2023, *three* Romanian judges of the Bucharest Court of Appeal considered the Tates' appeal of an earlier ruling extending their house arrest and evidence presented therein and ultimately ruled against them at that time. Compl. ¶106 at fn. 44. On this fact alone, Plaintiffs' false imprisonment claim must be dismissed. However, even if the Tates' detention met the elements of a false imprisonment claim, they have failed to establish that their detention was the result of any action by Defendant Mary Doe.

"To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement. *Rothstein v. Jackson's of Coral Gables, Inc.*, 133 So. 2d 331, 332 (Fla. 3d Dist. Ct. App. 1961). **A citizen does not "indirectly procure" a detention simply by providing information to law enforcement that leads to detention.** *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So.2d 678, 682 (Fla. 1980)(emphasis added). In *Pokorny*, the Florida Supreme Court held that "a private citizen may not be held liable in tort where he neither actually detained another nor instigated the other's arrest by law enforcement officers." 382 So. 2d at 682.

Here, Plaintiffs allege that they were "unlawfully incarcerated and wrongfully detained for months as a direct result of the human trafficking and baseless other criminal allegations" made by the Defendants. Compl. ¶128. Undermining their own claim, Plaintiffs assert that allegations by Jane Doe "prompted ***Romanian authorities' investigation into the Tate Brothers, resulting in the Tate brothers' incarceration and ongoing house arrest***." Compl. ¶106 (emphasis added). Romanian police raided the home where Mary Doe was residing on April 12, 2022. Compl. ¶100. The Tate brothers were not arrested until December, nearly eight months after the police raid.

Compl. ¶106 at fn. 44. The article from footnote 44 contains information the Tates' chose to withhold from the Court because it invalidates the entirety of their claims:

> DIICOT alleges that the four defendants formed a criminal group in 2021 "in order to commit the crime of human trafficking" in Romania, as well as in the United States and Britain. There are **seven** female victims in the case, DIICOT said, who were lured with false pretenses of love and transported to Romania, where the gang sexually exploited and subjected them to physical violence. One defendant is accused of raping a woman twice in March 2022, according to the agency.

*Id.* (emphasis added). Florida law is clear that giving information to police or accusing someone of committing a crime is insufficient to form the basis for a false imprisonment claim "so long as [she] leaves to the police the decision as to what shall be done..." *Pokorny*, 382 So. 2d at 682.  As the Tates establish in their own pleadings, their imprisonment was a result of criminal investigation by the Romania's anti-organized crime agency, conducted over a period of eight months and included the statements of at least six other women besides Mary Doe.  To conclude that Plaintiffs' arrest and imprisonment was the "direct" result of any statements made by Defendants, as their Complaint does, defies logic Accordingly, Plaintiffs' claim of must be dismissed with prejudice.

### C.  Plaintiffs' Complaint Fails to State a Claim of Civil Conspiracy

Plaintiffs allege that Jane Doe and Mary Doe "colluded...to intentionally inflict harm on the Tate Brothers and also obtain money from A. Tate by false pretenses" and that they suffered damages due to the victim-Defendants' "defamation." Compl. at ¶¶ 137-139. As Plaintiffs have failed to meet the pleading standard required for any of the alleged torts—and did not even assert a claim of defamation against Mary Doe or Jane Doe—there is no basis for their civil conspiracy claim.

Florida does not recognize an independent cause of action for civil conspiracy; rather, the plaintiff must allege an underlying illegal act or tort on which conspiracy is based. *Raimi v.*

*Furlong,* 702 So.2d 1273, 1284 (Fla. 3d DCA 1997). To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott,* 561 Fed.Appx. 882, 886 (11th Cir.2014) (quoting *Raimi v. Furlong,* 702 So.2d 1273, 1284 (Fla. 3d DCA 1997))

Plaintiffs fail, beyond conclusory and vague language, to allege that Mary Doe entered into any agreement with Jane Doe to conspire against them. However, "[w]ithout facts to substantiate them," Plaintiffs' allegations "are nothing more than a series of naked assertions, and naked assertions can't withstand a motion to dismiss." *Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga.*, 631 F. App'x 888, 890 (11th Cir. 2015). In support of their claim, Plaintiffs attempt to mischaracterize communications between the parties and to pass on conclusory assertions as well-asserted factual allegations in support of their claim. Compl. ¶¶ 85–87; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Plaintiffs provide no basis of a conspiracy. First, Plaintiffs concede any alleged conspiracy was unsuccessful. Compl. ¶ 88 (referencing Defendants' "failure to execute their conspiracy"). Further, all of the correspondence to which Plaintiffs cite fails to support their assertions. *See, e.g.*, Compl. ¶ 91. In none of the excerpted messages do Jane Doe and Mary Doe agree to deceive Plaintiffs into "steal[ing] money" or the like for the purpose of defrauding Plaintiffs. Compl. ¶ 138. Rather, on their face, these text messages demonstrated the steps they took in order to plan their escape from an unsafe environment.

Additionally, Plaintiffs' insinuations do not provide a sufficient basis for the claim to

proceed. Plaintiffs' use of circumstantial evidence is insufficient. Compl. ¶¶ 84–87. Civil conspiracy requires direct evidence and can only be supported by circumstantial evidence "when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary," a burden Plaintiffs cannot meet. *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (citing *Diamond v. Rosenfeld*, 511 So.2d 1031, 1034 (Fla. Dist. Ct. App. 1997)). Here, the Defendants' communications did not contemplate fraud, exploitation, or other tortious conduct against Plaintiffs, and mere communication alone does provide a basis for asserting impropriety. As such, these facts are equally consistent with Jane Doe's and Mary Doe's lawful conduct. Despite Plaintiffs' allegations that Mary Doe and Jane Doe "outline[ed] a systemic plot to deceive" and to "steal money" from them, the Complaint contains no details on the alleged "plot" and relies only on this conclusory assertion in support of their claim. Compl. ¶ 138. Conclusory statements fail to meet the pleading standard by failing to allege "sufficient factual matter" to sustain a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, Florida courts have held that simply alleging a "scheme" without further explanation is an inadequate pleading for a conspiracy. *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Group*, 79 Sp.3d 855, 865 (Fla. Dist. Ct. App. 2012). The Complaint here asserts conclusory and ill-defined allegations which refer to a plan to defraud Plaintiffs without providing further details on the alleged plan. Compl. ¶ 139.

Mary Doe's alleged text messages exchanged with Jane Doe do not demonstrate an overt act taken to conspire against Plaintiffs. Compl. ¶¶85 – 88. These text messages are insufficient on their own to constitute the necessary overt act required for a finding of civil conspiracy. Moreover, they fail to support the assertion Mary Doe carried out an unlawful act by unlawful means.

Further, Plaintiffs fail to identify the harm they suffered as a result of the alleged civil

conspiracy. In fact, Plaintiffs have profiteered from their detention. As one news outlet reported: "From inside jail the notorious influencer was also able to capitalize on his situation by selling a limited-edition t-shirt to celebrate his release on 1 April, which is called Freedom, and is emblazoned with a chess piece. In true Tate form the relatively plain garment costs $131 (£104.86) and there are claims he has sold over 1,200 raking in another $150,000 (£120,000)."[7] Evidence that Plaintiffs allegations are not only implausible, but actually false, is properly considered by the Court at this stage. *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) ("A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment."). Accordingly, Plaintiffs civil conspiracy claim (Count VI) fails and should be dismissed with prejudice.

### D. Plaintiffs' Complaint Fails to State a Claim of Intentional Infliction of Emotional Distress

In support of their IIED claim, similar to all other claims, Plaintiffs assert vague, meaningless, and conclusory "facts." The underlying "conduct" that appears to form basis of their IIED claim against Mary Doe is "publishing statements to third parties" that led to the Tates' incarceration "causing extreme stress and emotional anguish," despite the fact that Plaintiffs' have not asserted a defamation or defamation *per se* claim against her. Compl. at ¶¶143-144. Moreover, at no point in their Complaint do Plaintiffs' assert or describe any statement published by Mary Doe.

As a threshold matter, under Florida law, Plaintiffs cannot maintain their IIED because of their status as public figures. *See* Compl. at ¶¶13, 17-18, 23 (describing having "tens of millions"

---

[7]Lydia Veljanovski, *Big Brother Star Andrew Tate Earned Millions Online From Vile Views While Behind Bars*, MIRROR (Apr. 14, 2023), https://www.mirror.co.uk/sport/boxing/cult-andrew-tate-still-spreading-29713427 (updated Apr. 21. 2023); *see also* Todd Spangler, *Twitter Starts Paying Some Creators Share of Ad Revenue on Invitation-Only Basis, Including Andrew Tate and Krassenstein Brothers*, VARIETY, (July 14, 2023).

of social media followers), and 29 (describing themselves as "celebrity entrepreneurs").  A claim of intentional infliction of emotional distress on a public figure requires the Plaintiffs plead and prove that Mary Doe was motivated by "actual malice" under New *York Times v. Sullivan*, 376 U.S. 254 (1964). As the Supreme Court stated in *Falwell v. Hustler*, 485 U.S. 46, 56- 57, 108 S. Ct. 876 (1988): "We conclude that public figures… may not recover for the tort of intentional infliction of emotional distress by reason of publications . . . without showing . . . that the publication contains a false statement of fact which was made with "actual malice," *i.e.,* with knowledge that the statement was false or with reckless disregard as to whether or not it was true." (Emphasis added) (internal citations omitted). Because the Plaintiffs fail to allege the publication of any statements by Mary Doe, let alone that any statements were motivated by "actual malice", the IIED claim should be dismissed.

The "actual malice" requirement aside, to successfully plead a claim of IIED in Florida, a plaintiff must show: (1) The wrong doer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotion distress; and (4) the emotional distress was severe. *Clemente v. Horne*, 707 So.2d 865, 866 (Fla. 3d DCA 1998)(citations omitted).

The first prong of the test requires that Mary Doe's conduct be "intentional or reckless" which is absent from Plaintiffs' Complaint.  The test also requires her conduct to be "outrageous" which is described in Florida as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community.

*Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985).

In evaluating whether conduct is outrageous, "the subjective response of the person who is the target of the actor's conduct does not control ... Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) (citations and internal quotation marks omitted). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." *Id.* (citations omitted). See *Malverty,* 407 F. Supp. 3d at 1263. Here, the only conduct in Plaintiffs' Complaint that is atrocious and utterly intolerable is the human trafficking by the Tate Brothers and the rape of young women by Andrew Tate. Compl. ¶106 at fn. 44.

Furthermore, the Tates have not sufficiently established the requisite injury to sustain their IIED claim. While the Tates allege they experienced "insomnia, weight loss, chest pains, and other physical ailments" (Compl. ¶144) they fail to assert *when* these symptoms started as required by Florida law. *Willis v. Gami Golden Glades, LLC*, 967 So.2d 846, 850 (Fla. 2007). "[T]he plaintiff must suffer the complained-of mental distress and accompanying physical impairment 'within a short time' of the incident." Id. (quoting *Eagle–Picher Indus., Inc. v. Co*x, 481 So.2d 517, 526 (Fla. 3d DCA 1985*)*).

The Plaintiffs claim general "emotional anguish" without further description, alleging that it led to "insomnia, weight loss, chest pain" Compl. ¶ 144. "The objective question is whether the emotional distress the plaintiff suffered was so intense and so long lasting that no reasonable person should be expected to endure it." *Kim v. Jung Hyum Chang*, 249 S0.3d 1300, 1305-1307 (DCA2, Fla.) [internal citations omitted]. Plaintiffs' fail to plead injuries arising to this severity,

and their own public statements since their incarceration entirely undermine their claims. In fact, in his interview with Tucker Carlson, when asked by Carlson, "What was it like being in jail with your brother?" Tristan Tate responded, "Romanian jail is no picnic, but frankly once they moved me into a room with Andrew, frankly I quite enjoyed jail...I was laughing in jail and I'm laughing right now." [8]

### E.   Plaintiffs' Complaint Fails to State a Claim of Negligent Infliction of Emotional Distress

To successfully plead NEID a plaintiff must allege: "(1) . . . physical injury; (2) . . . caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Corbin v. Prummell*, 2:22-CV-394-JES-KCD, 2023 WL 1967574, *14 (M.D. Fla. Feb. 13, 2023) (internal citations omitted).

Here, as with all of their claims as to Mary Doe, Plaintiffs fail to allege with any specificity, exactly what conduct by Mary Doe allegedly caused "discernible physical injury from the psychological trauma" of being imprisoned by the Romanian government. Compl. at ¶148. Further, Plaintiffs fail to sufficient plead discernible physical injury required by Florida law, and their very public, constant social media posts featuring their exercise routines and travel directly undermine these allegations. First, the Tates did not "suffer a physical injury" as required by the "impact rule". *See e.g. Lotierzo v. Barbarito,* 356 So. 3d 846, 848 (Fla. Dist. Ct. App.  2023) ("before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an

---

[8] @TuckerCarlson, X (August 6, 2023, 7:41 PM) Tucker Carlson interview with Tristan Tate, at 6:55 to 8:40, https://twitter.com/TuckerCarlson/status/1688334487002791937?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1688334487002791937%7Ctwgr%5E7ce90bb5e548060518dec4c197c15d22303c546e%7Ctwcon%5Es1_c10&ref_url=https%3A%2F%2Ftennesseestar.com%2Fnews%2Ftucker-carlson-interviews-andrew-tates-brother-tristan-in-episode-14-of-tucker-on-twitter%2Fkhousler%2F2023%2F08%2F07%2F

impact.") (internal citations omitted); *see also Thomas v. OB/GYN Specialists of Palm Beaches, Inc*., 889 So. 2d 971, 972 (Fla. Dist. Ct. App. 2004) ("According to the Supreme Court of Florida, the impact rule is alive and well."). This doctrine is long settled in Florida since the seminal case *International Ocean Tel. Co. v Saunders*, 14 So. 148, 32 Fla. 434 (1883) ("mental anguish" is not recoverable in a case of infliction of emotional distress). While the Complaint makes the conclusory assertion that the Tates suffered "both psychological and physical harms", it does not say whether the emotional distress "flows" from physical injuries as required by *Lotierzo*, *supra*. This is a fatal defect under Florida's impact rule.

## CONCLUSION

For the above-stated reasons, and pursuant to Federal Rules of Civil Procedure 12(b)2, 12(b)5, and 12(b)6, Defendant Mary Doe respectfully requests that this Court dismiss all of the Plaintiffs' claims against her, with prejudice.

Respectfully submitted,

Date:  September 24, 2023

By: _____
Jillian Roth, Esq. [FBN 1036053]
**LAFFEY, BUCCI & KENT, LLP**
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
Telephone: 215-399-9255
Fax: 215-241-8700
Email: jroth@laffeybuccikent.com

*Attorney for Defendant Mary Doe*

**<u>Certificate of Service</u>**

I hereby certify that on September 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BY:  _____
Jillian P. Roth, Esq.
**Laffey, Bucci & Kent, LLP**

**SERVICE LIST**

Thomas Maniotis, Esq.
**Equity Legal PLLC**
5201 Blue Lagoon Dr., Floor 8
Miami, FL 33126
Phone: (321) 313-8642
Fax: (321) 988-0238
Email: tamaniotis@equitylegal.net

Joseph D. McBride, Esq.
**The McBride Law Firm, PLLC**
99 Park Avenue, 6th Floor
New York, NY 10016
Phone: (917) 757-9537
Email: jmcbride@mcbridelawnyc.com

*Attorneys for Plaintiffs*

Danielle Bianculli Pinter, Esq.
Benjamin W. Bull, Esq. (*Pro Hac Vice*)
Peter A. Gentala, Esq. (*Pro Hac Vice*)
Christen M. Price, Esq. (*Pro Hac Vice*)
Victoria Hirsch, Esq.  (*Pro Hac Vice*)
**National Center on Sexual Exploitation**
1201 F. St. NW, Suite 200
Washington, DC 20004
dpinter@ncoselaw.org
bbull@ncose.com
pgentala@ncoselaw.org
cprice@ncoselaw.org
vhirsch@ncoselaw.org
Phone: (202) 393-7245

Christian W. Waugh, Esq.
**Waugh PLLC**
201 E. Pine Street, Suite 315
Orlando, FL 32801
cwaugh@waugh.legal
Phone: (321) 800-6008
*Attorneys for Defendants Jane Doe, June Doe, John Doe and Liam Doe*