## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA WEST PALM BEACH DIVISION
### Case No.: 9:23-cv-81150-RLR

ANDREW TATE AND TRISTAN TATE,

     Plaintiffs

vs.

JANE DOE, et al.,

     Defendants.

_____/

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO REMAND

Plaintiffs, ANDREW TATE AND TRISTAN TATE, by and through the undersigned counsel, file this Reply to Defendants Response to Plaintiffs Motion to Remand, and states as follows:

## TABLE OF CONTENTS

*I.   Introduction* ................................................................................................................ *2*

*II.   Defendants attempt to rationalize their delay tactics by falsely claiming they are pursuing rights under the removal statute, especially related to Florida Liam Doe's rights under Section 1442 and 1442(a).* ......................... *3*

*III.   Contrary to Defendants' allegations, Plaintiffs' attorneys made every effort to meet and confer to discuss service or waiver of service and took vigilant steps, over months, to serve United States Jane Doe and Moldovan Mary Doe, who were in hiding according to Ms. Pinter.* ........................................................................................ *6*

*IV.   Defendants argue that Florida Liam Doe has both official and qualified immunity, which only applies to the discretionary conduct of federal officials, despite also insisting that his conduct was mandatory, thus contradicting the entire legal theory on which their claims are based.* .......................................................................................... *9*

*V.   Defendants' own case law also refutes their argument that Florida Liam Doe acted within his line of duty as a member of the United States military, and therefore, qualify for a federal defense under 28 U.S.C. § 2679.* ..... *10*

*VI.   Defendants' implication that Plaintiffs must prove every element of defamation in order to assert a viable claim against them is not supported by Florida law, and the rest of their demands to reargue jurisdictional discovery are spurious.* ...................................................................................................................... *11*

1

## I.    Introduction

Defendants have devoted a significant portion of the past month filing spurious motions to sow confusion about straightforward questions of law.  Along the way, opposing counsel has also lodged baseless accusations and innuendo against Plaintiffs' attorneys – distorting, if not downright fabricating, basic questions of law and fact.  Meanwhile, Defendants have implied that Plaintiffs' attorneys were somehow not doing their due diligence.

In reality, Defendants are filing spurious motions, as confirmed in emails between Plaintiffs' and Defendants' counsel,[1] to stonewall the legal proceeding in the hope of buying extra time (and potentially drum up further publicity as a means to help finance their legal operation) in a clear attempt to cause unnecessary delays and abuse the judicial process with insignificant eleventh-hour filings requesting additional time.  This Reply is thus intended to help refocus this Honorable Court back onto the main legal issue: Defendants have *no right* to remove this case to federal court.

For reasons already well-established, but elaborated again below, Plaintiffs, though American citizens, are "stateless" for the purposes of diversity jurisdiction[2], because they are full time residents of Romania, are not United States domiciliaries, and are not owners of any businesses based or performing services in any State of the United States.  Furthermore, every civil claim alleged by Plaintiffs falls within the gamut of Florida state law.  Florida State Court has the authority to hear defamation cases based on the well-settled rule that defamatory content made available online, which is accessible by a person from the forum state, is actionable within the

---

[1] See Attached Exhibit A, as well as the discussion in Section III of Plaintiffs' attorneys' consistent attempts and strident efforts to serve Defendants, and an explanation of the Defendants' attorneys' repeated failure to cooperate with our requests.

[2] See declarations of Plaintiffs stating that they have no ownership interest in any U.S. business attached hereto as Exhibit B and confirming their affidavits, which have been attached to the Motion to Remand as Exhibit C.

State of Florida.  The actions of all Defendants caused this information to be made publicly available.

Finally, there is no conflict here on *any* issue between federal and state law, and therefore, no federal supremacy issue whatsoever.  Whatever military office Florida Liam Doe claims to have occupied at the time – Marine Reservist, Field Artillery Cannoneer, or something else (the record remains unclear) – the law is the same whether it falls in federal or state court: no military officer may defame any other person, within or outside his scope of duties, under any circumstance.  To the extent an alleged military officer, as here, defames another party with a series of malicious lies using the color of his office, that is invariably an actionable claim – and both federal and state law treat the issue the same.

## II.    Defendants attempt to rationalize their delay tactics by falsely claiming they are pursuing rights under the removal statute, especially related to Florida Liam Doe's rights under Section 1442 and 1442(a).

Defendants attempt to rationalize their repeated delays by claiming that they are "pursu[ing] their legal rights in its defense" under the removal statute.  (Dkt 47 at 2).  Defendants contend removal to federal court "is proper and necessary under the circumstances particularly with respect to Liam Doe's rights under Section 1442 and 1442(a)."  (Dkt 47 at 2).  The outsized importance Defendants ascribe to Section 1442 and 1442(a) is rather striking, considering that nowhere in the Defendants' original Notice of Removal was that seemingly all-important statute invoked.[3]

It is obvious what the Defendants are doing.  The last-minute reliance on Section 1442 and 1442(a) is a thinly veiled coverup for what really happened: Plaintiffs were always considered

---

[3] See Defendants' Notice of Removal, Dkt 1 at ¶ 21: "For the foregoing reasons, the Court has subject matter jurisdiction over this Action, and Defendants hereby remove this Action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

"stateless" for purposes of diversity jurisdiction.  Once this fact became readily apparent, Defendants had to scramble for another reason for removal.  They believed they found their lifeline in Section 1442 and 1442(a), but in reality, and as explained *ad nauseam* in Plaintiffs' Motion for Remand, Defendant Florida Liam Doe "is not entitled to remove this action under Section 1442(a) because he was not acting under the color of his office and does not have a colorable defense…". (Dkt 31 at 12).  The reason why Defendants cannot remove under Section 1442 and 1442(a) is straightforward: a causal connection must exist between what the officer has done under asserted official authority and the state prosecution.  See *Maryland v. Soper*, 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926).  As already discussed at length, here "[Florida Liam Doe's] actions did not contribute to the efficient operation of the United States Marine Corps, nor was it related to his official training and title of Field Artillery Cannoneer."[4]  As will be elaborated below, neither Section 1442 nor 1442(a) encapsulates a military officer acting "under color of his office" if that officer proceeds to recklessly and with wanton disregard for the truth spread defamatory lies around the world that has a negative impact on the lives of Plaintiffs – including, lest we forget, countless death threats, a house arrest, censorship, incarceration, and untold financial and reputational damages against the Plaintiffs.

In short, to the extent reporting allegations of human trafficking fell within his purview of his line of duty at all, Florida Liam Doe far exceeded the bounds of that office:  First, the official DoD PowerPoint presentation for Combating Trafficking in Persons, which was initially referenced in Plaintiffs' Motion for Remand[5] – and later discussed at length by Defendants[6] in

---

[4] For a lengthier explanation of the case law, again see Plaintiffs' Motion for Remand (Dkt. 31 at 14).
[5] See id (Dkt 31 at 15).
[6] Oddly, in their Response, Defendants first attempt to downplay the significance of the PowerPoint by claiming that "the presentation attached by Plaintiffs is not the required training designed specifically for Marines that Liam Doe has taken on multiple occasions."  (Dkt. 47 at 5-6).  Then, however, they spend multiple pages discussing the PowerPoint, incorporating screenshots of Presentation slides, which all suggests that the PowerPoint *was relevant* to Florida Liam Doe's duties, and that furthermore, contrary to the facts, he acted within his scope of duties by reporting

their Response to explain that Florida Liam Doe's reporting fell within his scope of duties,[7] makes crystal clear "that DoD personnel are to not get directly involved and report any suspicions to their superior officer or to call or email the DoD Inspector General Hotline." (Dkt. 31 at 15). Even the Department of Justice's manual on reporting human trafficking, which is less on point than the aforementioned PowerPoint, does not say anything about reporting to military friends or foreign military acquaintances.[8]

Since Defendants failed to furnish an alternative manual outlining Florida Liam Doe's official duties, and given the attention they nevertheless place on the PowerPoint, we resort to these authorities to determine his official duties, in light of the relevant case law. The slides of the PowerPoint specifically state that any suspicious activity ought to be reported "to your Chain of Command, your local DoD IG office, or use the DoD IG Hotline." (Dkt. 47 at 7). By "Chain of Command," neither common sense, statute, legislative history, nor case law[9] would dictate that to include reporting to "a couple of Marines and Foreign Military friends in Eastern Europe" who were on "standby," as text messages between Florida Liam Doe and other third parties stationed around the world, and certainly outside his Chain of Command, would prove.[10]

Moreover, Florida Liam Doe knew or should have known that US Jane Doe was a serial liar, and that reliance on her word for the basis of a human trafficking allegation was completely

---

the unfounded allegations of human trafficking "to his chain of command." (Dkt. 47 at 6). Interestingly, despite being given the opportunity to correct the record – both with respect to Florida Liam Doe's official military role and any relevant manuals or guidebooks specific to that office, Defendants failed to provide any other evidence to undermine the claim that the PowerPoint was not directly on point.

[7] See Defendants' Response in Opposition to Plaintiffs' Motion for Remand (Dkt. 47 at 5).

[8] See attached Exhibit C.

[9] See *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1156 (S.D. Fla. 2017) citing *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010) (holding that "an out-of-state website operator was subject to personal jurisdiction under section 48.193(1) for defamatory materials that were posted on Defendants' website").

[10] See attached Exhibit C, documenting text messages between Florida Liam Doe and other third parties. In light of the text messages, Florida Liam Doe now provides a declaration that directly contradicts his own written words, which is par for the course from the Defendants in this matter.

reckless.  (Compl. ¶ 36–44.)  This refutes Defendants' claims that "Plaintiffs ignore the article" where a Marine was commended for reporting sex trafficking to his superior and/or local law enforcement.  (Dkt. 47 at 9).  But what Defendants fail to grasp is that the article is wholly irrelevant for the purposes of Florida Liam Doe because the situations are completely different.  In the article cited, the Marine personally encountered the sex trafficking.  Here, the Defendant observed nothing and was relying on the words of a known serial liar, with which he had a prior romantic relationship.  (Dkt. 47 at 9.)  Far from being an "irrelevant distraction," the relationship between the two Defendants is entirely relevant because it provides further proof that Florida Liam Doe exceeded his duties by going well beyond his chain of command and failing to exercise sound and competent judgment, instead reacting emotionally based solely on the hearsay of an individual whose known track record of lying, gaslighting, and manipulation raises grave doubts about her credibility.

### III.    Contrary to Defendants' allegations, Plaintiffs' attorneys made every effort to meet and confer to discuss service or waiver of service and took vigilant steps, over months, to serve United States Jane Doe and Moldovan Mary Doe, who were in hiding according to Ms. Pinter.

First, Plaintiff's counsel made every effort to serve Defendants Florida Liam Doe, United States Jane Doe, and Moldovan Mary Doe ("Unserved Defendants"), despite Defendants' counsel actively concealing their location to make every effort to avoid service and unduly slow the progression of this proceeding.  Counsel for Defendants not only admitted that US Jane Doe and Moldovan Mary Doe were concealing themselves, but never actually answered to Plaintiffs' counsel whether she represented those two Defendants, which was only confirmed after removal by court filings.  Defendants' counsel was quoted in a news article indicating that US Jane Doe and Moldovan Mary Doe were concealing themselves.  Despite these significant obstacles, Plaintiffs' counsel searched for the Unserved Defendants' whereabouts for months: affidavits of

diligent search were prepared and filed with the court; Plaintiffs' counsel contemplated moving for alternative service; and private investigators were hired to prepare service of US Jane Doe and Florida Liam Doe.

Defendants are flat wrong to assert "Plaintiffs have never requested a meet and confer to discuss service or waiver of service," implying that Plaintiff's attorneys had not been diligent in trying to serve Defendants.  (Dkt 47 at 2).  Nothing could be further from the truth.  In fact, on multiple occasions, Plaintiff's counsel asked to meet and confer.  On August 11, 2023, Mr. Maniotis emailed Defendant's counsel, with National Center on Sexual Exploitation ("NCOSE") copied, "**additionally, please indicate whether you will accept service on behalf of [US Jane Doe] and [Moldovan Mary Doe].**  They are in hiding, presumably, avoiding service."[11] [Emphasis Added.]

On August 14, 2023, Mr. Maniotis again emailed Defendants' counsel and stated as follows: "Ms. Pinter, once more, **please note that you completely avoided the question regarding your representation of [Moldovan Mary Doe] and [US Jane Doe]**.  I suppose common sense would dictate, based on your email correspondence to co-counsel, the quote in the article, the well-known letter to Marlin Fisher, and the fact that you are representing [US Jane Doe's] parents, you do represent [US Jane Doe] and more likely [Moldovan Mary Doe].  **As you seem not to want to answer the question of representation or acceptance of service**, we will be moving forward with alternative service of process for [US Jane Doe] and [Moldovan Mary Doe]."[12]  [Emphasis Added.]  On July 19, 2023, Joseph McBride wrote to Ms. Pinter, "in that vein, I ask you this: **what are the names of the people you represent?**  If service has not been made

---

[11] *See* Exhibit B for a complete and redacted copy of the email transcript.
[12] *See* Exhibit B for a complete and redacted copy of the email transcript.

(I believe you're wrong), **will you accept service on your client's behalf?**"[13]  [Emphasis Added.] On August 21, 2023, Mr. Maniotis again pressed for an answer regarding Ms. Pinter's representation of Unserved Defendants: "after the notice of removal, it is clear that you all are in contact with the unserved defendants.  **Once more, to painstakingly reiterate, you have been previously asked about your representation of the unserved defendants and if you would accept service.**"[14]  [Emphasis Added.]

Despite having asked and re-asked (and re-asked) whether Defendants' counsel would accept service, Defendants' counsel had the audacity to say, "Plaintiffs have raised the issue a total of three times in conjunction with more pressing matters unrelated to service and have not raised the issue since August 21, 2023." (Dkt 47 at 2).  Even more incredulously, Defendants' counsel states, "…since removal, it appears that Plaintiffs have made no efforts to serve any Defendants and since August 21, have not raised the issue of service with counsel."   (Dkt 47 at 2). Defendants' counsel even implies that they could not respond to the question of service because it was raised during "more pressing matters," but those "matters" have been addressed while the question of service was simply asked and remain only partially addressed (recently) by counsel for Moldovan Mary Doe.

Furthermore, Defendant's counsel has still not provided us with an unredacted amended notice of removal, which continues to conceal the whereabouts of US Jane Doe, further complicating any possibility of expedient service.  Defendants are readily aware that affidavits of diligent search are filed with the Palm Beach County Circuit Court.  However, Plaintiffs' are

---

[13] *See* Exhibit B for a complete and redacted copy of the email transcript.
[14] *See* Exhibit B for a complete and redacted copy of the email transcript.

waiting to determine whether to proceed with substitute service according to federal court or state court rules, depending on the outcome of the motion to remand.[15]

IV.     **Defendants argue that Florida Liam Doe has both official and qualified immunity, which only applies to the discretionary conduct of federal officials, despite also insisting that his conduct was mandatory, thus contradicting the entire legal theory on which their claims are based.**

Defendants assert that Florida Liam Doe's report "was both related to and **required by his training**." [Emphasis Added.] (Dkt. 47 at 5). In other words, Florida Liam Doe's report was mandatory. This is very interesting because **every colorable defense under immunity requires discretion**. Here, the Defendants claim there is no discretion. Yet, the defenses they assert – official and qualified immunity, as well as the attendant case law they cite, makes explicit that in order to be granted those protections, "the conduct of federal officials must be discretionary in nature and within the scope of employment before the official's conduct is absolutely immune from state tort liability…" *Scott v. DeMenna*, 840 F. 2d 8, 9 (11th Cir. 1988) (Dkt. 47 at 9).

Similarly, to assert a colorable defense under qualified immunity, which Defendants also claim, government officials must have been performing "discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Dkt. 47 at 10) (Dkt. 47 at 10). Assuming *arguendo* that Florida Liam Doe is in fact a Marine Reservist, as Defendants maintain, their assertion of qualified immunity privilege fails. Defendants refer to *Navarro v. City of Riviera Beach* to support their claim. 192 F. Supp. 3d 1353 (S.D. Fla. 2016). However, in *Navarro*, the Southern District of Florida Court expressly states, which Defendants' Response quotes verbatim,[16] that "[t]o receive

---

[15] In their Response, Defendants state that "Plaintiffs have failed to comply with this Court's order requiring Plaintiffs to file a status report regarding service on the first business day of each calendar month. (Dkt. 11)." Plaintiffs recognize this error, apologize to this Honorable Court for the delay, and have taken remedial steps by filing the service status report on September 21, 2023, along with accompanying affidavits of diligent search for Florida Liam Doe and US Jane Doe.

[16] See Dkt. 47 at 10.

qualified immunity, 'the public official **must first prove that he was acting within the scope of his discretionary authority** when the allegedly wrongful acts occurred." *Id* at 1362.  This again directly conflicts with Defendants' earlier claim that Florida Liam Doe was required – i.e., was not discretionary – based on his training, to report allegations of human trafficking.  (Dkt. 47 at 5).  Defendants simply cannot have it both ways: if the reporting was required, as they insist, they cannot turn around and assert a colorable defense under immunity, which requires discretion.

**V.    Defendants' own case law also refutes their argument that Florida Liam Doe acted within his line of duty as a member of the United States military, and therefore, qualify for a federal defense under 28 U.S.C. § 2679.**

Defendants assert a defense under 28 U.S.C. § 2679 that to the extent "the defendant employee [of the Government] was acting within the scope of his office or employment at the time of the incident," any civil action "shall be deemed an action against the United States…". (Dkt. 47 at 11-12).  They rely on the decision in *Nadler v. Mann*, in which the Eleventh Circuit affirmed a lower court ruling that held that the Defendant, who had been sued for defamation, was acting within his line of duty when the Defendant reported to a federal agency that Plaintiff was subject of a federal criminal investigation and could therefore remove pursuant to Section 2679.  951 F.2d 301, 304 (11th Cir. 1992).  Importantly, the Eleventh Circuit reversed the lower court's decision as to the allegation that the Defendant leaked information about the investigation to the press, which the court held was conduct that fell outside the scope of his employment.  *Id* at 306.  This was because "[a]n AUSA who leaks information to the press simply is not "doing what his employment contemplated." *Id*.  This decision is exactly on point here with Florida Liam Doe, as reporting his suspicion of human trafficking to people overseas and other third parties are not within the scope of what his employment contemplated.  Defendants might assert that Florida Liam Doe reporting to the chain of command and eventually to USMC in Romania was entirely contemplated by his employment as an alleged Marine Reservist, while ignoring the text messages

that Florida Liam Doe told other third parties around the world to remain on "standby" in case they needed to intervene.[17]   These two facts, taken together, cannot be squared with the requirement under § 2679: if he told other third parties stationed overseas to remain on "standby," it directly refutes what Florida Liam Doe claimed in a declaration that he never told anyone else except his chain of command or the embassy.   Florida Liam Does' text messages, which have been given to the court, prove that he exceeded the scope of his authority and, furthermore, arguably committed a state tort as well to be proven at trial.

**VI.   Defendants' implication that Plaintiffs must prove every element of defamation in order to assert a viable claim against them is not supported by Florida law, and the rest of their demands to reargue jurisdictional discovery are spurious.**

Defendants perplexingly assert that the defamation claims against Defendants Florida June and John Doe and Florida Liam Doe cannot be sustained because the Plaintiffs "have not even brought claims for defamation against Jane Doe."   But this assertion flies in the face of Florida law, which specifically says that any defamatory information that is accessible by a Florida resident constitutes committing a tort within the State of Florida.[18]   They further argue that the served forum defendants should be dismissed because they did not actually defame the Plaintiffs – but the Complaint establishes that Florida Liam Doe and Florida June and John Doe disclosed the defamatory information to third parties and failed to correct it, even knowing there was more than a substantial likelihood that US Jane Doe was lying.   Finally, no outstanding question remains regarding Plaintiffs' domicile, despite what Defendants alleged: it is well established that Plaintiffs are Romanian residents and are "stateless" for purposes of diversity jurisdiction.   Accordingly, Defendants' demand for an evidentiary hearing would be a complete waste of this Honorable Court's time because it is general knowledge that the Plaintiffs live and work in Romania.

---

[17] See Exhibit C, Florida Liam Doe's text messages to third parties stationed overseas.
[18] See *Gubarev v. Buzzfeed, Inc.*, *supra* note 9.

/s/ Thomas Maniotis, Esq.               /s/ Joseph D. McBride, Esq.
Thomas Maniotis, Esq.                  Joseph D. McBride, Esq.
Florida Bar No. 122414                 NYS Bar No. 5445879 *Pro Hac Vice*
Equity Legal, PLLC                    THE MCBRIDE LAW FIRM, PLLC
5201 Blue Lagoon Drive, Floor 8        99 Park Avenue, 6th Floor
Miami, FL 33126                     New York, NY 10016
p:321-313-8642                      p: (917) 757-9537
e: tamaniots@equitylegal.net         e: jmcbride@mcbridelawnyc.com
*Attorneys for Plaintiffs:*             *Attorneys for Plaintiffs:*
*Andrew & Tristan Tate*              *Andrew & Tristan Tate*

## **CERTIFICATE OF GOOD FAITH CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that I conferred with counsel for Defendants. Defendants oppose the relief sought in this Motion and Reply.

/s/ Thomas Maniotis, Esq.
Thomas Maniotis, Esq.

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on September 27th, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will, on the same day, electronically serve true and exact electronic copies on the persons below to their stated email addresses:

/s/ Thomas Maniotis, Esq.
Thomas Maniotis, Esq.