**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA WEST PALM BEACH
DIVISION
Case No.: 9:23-cv-81150-RLR**

ANDREW TATE AND TRISTAN TATE,

     Plaintiffs

vs.

JANE DOE, et al.,

     Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MARY DOE'S MOTION TO DISMISS

     Plaintiffs, ANDREW TATE AND TRISTAN TATE, by and through the undersigned counsel, file this Response in Opposition to MARY DOE'S Motion to Dismiss, for the grounds stated below.

### TABLE OF CONTENTS

*UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA WEST PALM BEACH DIVISION*..... *1*

*PLAINTIFFS' RESPONSE IN OPPOSITION TO MARY DOE'S MOTION TO DISMISS*........................................ *1*

*Introduction*................................................................................................................................................... *2*

*Legal Standard*.............................................................................................................................................. *4*

*Legal Argument*............................................................................................................................................. *5*

   I.    Defendant Mary Doe's involvement in a civil-conspiracy with Jane Doe to obtain money using false pretenses, directly resulting in tortious activity within Florida, falls under the ambit of Florida's long-arm statute, sec. 48.193, sufficient to find jurisdiction over her based on well-established case law. ........................................ 5

   II.    The Exercise of Personal Jurisdiction Over Mary Doe Would Be Consistent With the Due Process Clause of the Fourteenth Amendment and not Violate Due Process nor Offend Traditional Notions of Fair Play and Substantial Justice ....................................................................................................................................... 10

   III.    Plaintiffs' Claim for False Imprisonment Sufficiently Satisfies the Minimum Plausibility Standard .......... 14

   IV.    The Plaintiffs have sufficiently pleaded Intentional Infliction of Emotional Distress. ........................... 19

   V.    The Complaint Establishes the Prima Facie Elements for Negligent Infliction of Emotional Distress ........ 21

*CONCLUSION*..................................................................................................................................................... *22*

**Introduction**

Defendant Mary Doe's Motion to Dismiss: a relentless assault on the truth and law—is the latest installment in a series of frivolous filings by Defendant that grossly distort the facts of this case. The Defense knows that when analyzing a motion to dismiss, this Honorable Court is bound to accept the factual allegations in the complaint as true while reading the complaint in a light most favorable to the plaintiffs.  To overcome this, the Defense has broken the local rules by arguing facts improperly incorporated by reference. This Honorable Court would commit reversible error if it dismissed the complaint based on extraneous matters. Even so, the Defense has spent considerable time citing news articles and videos as evidence to contradict the complaint in a futile effort to tempt this Honorable Court to make an illegal ruling.  The Defense appears to believe in this strategy so much that on October 5, 2024, in Bucharest, Romania, attorney Jillian Roth, in referring to this case, explicitly stated to the Romanian Press that: ***"The Federal Judge in the United States, in her opinion, herself, upon review of the evidence submitted, called the women victims."*** Plaintiffs know that such a statement is untrue and contradicts this Court's order calling the Defendants "alleged victims." However, we must point out that such statements undermine and disparage the judicial process.

It is a fact that Black men are disproportionately convicted after being accused by women of crimes involving sexual advances and threats of violence.[1]  Andrew and Tristan Tate are two men of African American descent who have been falsely accused of crimes they did not commit by a woman with a history of perjuring herself. Two men who have vociferously proclaimed their innocence since the time of their arrest. The National Registry of Exonerations contains throngs of men who have suffered heartbreaking loss stemming from the kind of false allegations that have been levied against Andrew and Tristan Tate.[2]  Loss resulting from culturally incompetent arguments that criminalize minority speech patterns and play on age-old stereotypes.[3]  These

---

[1] See Daniele Selby, *From Emmett Till to Pervis Payne – Black Men in America Are Still Killed for Crimes They Didn't Commit*, Innocence Project (July 25, 2020), https://innocenceproject.org/emmett-till-birthday-pervis-payne-innocent-black-men-slavery-racism/.

[2] See The University of Michigan's National Registry of Exonerations (last visited October 24, 2023), https://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx.

[3] See Race and Wrongful Convictions in the United States:  The number of exonerations we consider has grown by almost 70% (September 2022), https://www.law.umich.edu/special/exoneration/Documents/Race%20Report%20Preview.pdf.

tiresome, antiquated tactics deployed by defense counsel may have been effective weapons in courts of segregation, but they have no place in today's world or—this Honorable Court.

Andrew and Tristan Tate are American citizens who are the product of a broken home. They are not college-educated. Andrew is a Muslim, and Tristan is a Romanian Orthodox Christian. Each takes their respective faiths seriously.  Both brothers were born and raised in circumstances that statistically indicate that they easily could have chosen a life of crime—but did not. Plaintiffs have risen to the heights of success many people dream of attaining because they consciously decided to use the circumstances under which they were born as fuel for the fire of personal achievement. Their charitable efforts, from TATE PLEDGE alone, have helped more than one million impoverished people in over fourteen countries worldwide.[4]  Some of their online remarks may sometimes sound like Howard Stern. And their religious conversions have inspired many to give faith a chance.  None of that, or the litany of extrinsic material the defense has cited in its Motion to Dismiss, has to do with anything with the causes of action laid out within the four corners of this Complaint.

The four corners of our well-pled Complaint outline a tragic and troubling history of a troubled adult woman who weaponized the Justice System as a youth.  Indeed, society may have failed to save Defendant Doe from the harsh reality of an unfair upbringing—but that is no excuse or justification for her actions.  Disadvantaged youth who exhibit patterns of criminal behavior as teenagers often receive jail sentences as adults. A disadvantaged youth may be a mitigating factor at sentencing. It is, however, no excuse nor justification for torts or crimes committed by adults. Our Complaint makes clear that Defendant Doe was an adult woman when she met Tristan Tate at a War Room event in Miami, Florida, and then solicited Tristan Tate to move to Romania, where she spent a total of six days before making a series of false reports first that resulted in a fully armed, highly trained SWAT team descending upon the Tate Estate in April of 2022. Swatting is the act of falsely reporting a serious law enforcement emergency, resulting in a SWAT team descending upon a residence, creating a risk of injury and death.  That is exactly what happened in this case, with SWAT officers going as far as to threaten to shoot a family dog that perceived the aggressive and brutal raid as a threat to the owners, Iasmina Pencov and Beatrice Anghel.

---

[4] See: *Tate Pledge Impact Statistics*, https://cobratate.com/pledge (last visited Oct. 23, 2023).

Swatting, often described as terrorism[5], is a felony under Federal and Florida State Law, punishable by up to 20 years of prison.  Defendant Doe fraudulently accused Plaintiffs, resulting in their being swatted and incarcerated.  The plaintiffs' personal lives and professional reputations were severely damaged as a result, as were those other home occupants whose lives were irreversibly traumatized by the police raids. Plaintiffs demand justice.

### Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly* citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the complaint's sufficiency—it does not reach the case's merits. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In *Ashcroft v. Iqbal*, the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Under the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, a pleading rife with "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Nor will "a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 557).

When analyzing a motion to dismiss, the Court accepts factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The Court limits its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); see also *GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In making its determination, the Court must consider whether a claim is plausible on its face.  Importantly, the Court's review cannot exceed the Complaint's four corners and exhibits.  *Newberry Square Fla. Laundromat, LLC*, supra at 589 (Fla. 1st DCA 2020). Where a motion to dismiss rests on facts outside the scope of the allegations contained in the complaint, the trial court commits reversible error in dismissing the complaint based on those extraneous matters.'" *Hewett-Kier Constr., Inc. v. Lemuel Ramos & Assocs., Inc.*, 775 So. 2d 373, 375 (Fla.

---

[5] See: Matthew James Enzweiler, Swatting Political Discourse: A Domestic Terrorism Threat, 90 Notre Dame Law Review 2001(August, 2015), https://scholarship.law.nd.edu/ndlr/vol90/iss5/9/.

4th DCA 2000). The Court, therefore, cannot consider news articles and videos as evidence to contradict the complaint because such determinations are properly reserved for a jury.  Neither can the Court deem meritorious threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, as proof that a plaintiff did not plausibly establish each one of their claims.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the standard of plausibility).

To survive a Motion to Dismiss, a complaint must contain sufficient factual allegations that would entitle the pleader to the relief sought if determined to be true.  Therefore, a complaint cannot be dismissed when its corners contain facts that are sufficient to satisfy the minimum plausibility pleading standard for each cause of action independently. *Id.*

False imprisonment in Florida is defined as "'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir.2006) (quoting *Escambia Cnty. Sch. Bd. v. Bragg*, 680 So.2d 571, 572 (Fla. 1st Dist.Ct.App.1996)).  "In a false imprisonment action, the plaintiff is required only to 'establish imprisonment contrary to his will and the unlawfulness of the detention.'" Id. (quoting *Rivers v. Dillards Dep't Store, Inc.,* 698 So.2d 1328, 1331 (Fla. 1st Dist.Ct.App.1997)). There is, however, an exception. In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim and (2) its authenticity is not challenged. Id. (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010)).

## Legal Argument

**I.     Defendant Mary Doe's involvement in a civil-conspiracy with Jane Doe to obtain money using false pretenses, directly resulting in tortious activity within Florida, falls under the ambit of Florida's long-arm statute, sec. 48.193, sufficient to find jurisdiction over her based on well-established case law.**

To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 Fed.Appx. 882, 886 (11th Cir.2014) (quoting *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d

DCA 1997)); see *Boorman v. Nevada Mem'l Cremation Soc'y, Inc.*, 772 F.Supp.2d 1309, 1315 (D.Nev.2011) ("Under Nevada law, to establish a civil conspiracy claim, a plaintiff must show (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort.") (quoting *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 110 P.3d 30, 51 (2005)).

Under Florida law, "Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state." *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009); see also *Wilcox v. Stout,* 637 So.2d 335, 337 (Fla. 2d DCA 1994) (holding that, if plaintiff successfully alleges that any member of a conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction).

For instance, in *AXA Equitable Life Ins. Co.*, the District Court held that for a conspiracy involving a majority of defendants who were citizens of Florida, Florida courts had jurisdiction over all of them under its long-arm statute, even if several of the defendants were not Florida residents. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009). The Court held that so long as "the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida." *Id*.

Furthermore, a Florida State Court also found that appellees who did not have personal jurisdiction in Florida but were included in a civil conspiracy claim that resulted in a tortious act committed in the state of Florida were nevertheless within the ambit of Florida's long-arm jurisdiction statute, section 48.193, Florida Statutes (1991). *Wilcox v. Stout*, 637 So. 2d 335, 336 (Fla. Dist. Ct. App. 1994). This holding reversed the lower court's decision, finding in error the view that defendants who did not personally commit acts in the state of Florida to not be brought under Florida's long-arm statute. *Id*. On appeal, the court held that if a complaint successfully alleges a cause of action of civil conspiracy, and, any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then those acts fall under the ambit of the long-arm statute. Id. at 337. *Honchell v. State*, 257 So.2d 889 (Fla.1971); *Farnell v. State*, 214 So.2d 753 (Fla. 2d DCA 1968); *Martinez v. State*, 413 So.2d 429 (Fla. 3d DCA 1982). In short,

the court found that "the well-established rules of criminal conspiracy comport with … section 48.193…". *Wilcox v. Stout*, supra at 337.

Here, the Complaint pleads sufficient facts well surpassing the plausibility pleading standard to show that Defendant Mary Doe conspired with Defendant Jane Doe to destroy the Tate Brothers' lawful businesses and render damages to them due to her tortious actions.  In addition to her trail of past diabolical exploits, evidence for Defendant Doe's intent to interfere with their businesses is observed in the fact that she was conscripted by Jane Doe and conspired with her to defraud the Tate Brothers of $200,000.00 in euros.  Compl. at 85.  Indeed, the Complaint includes text messages in which Jane Doe tells Defendant Mary Doe to "try to get $ from andrew," and then to "cover [your] tracks" upon execution. Compl. at 85-86.  Once that failed, Defendant Mary Doe and Jane Doe decided to pivot, claiming they were being "human trafficked," an extremely serious criminal felony that Defendant Mary Doe deliberately chose for the severe personal and professional consequences that would necessarily follow from it.  The Complaint goes to great lengths to establish that neither Defendant Mary Doe, Jane Doe, nor any other visitor, was **patently *not*** being human trafficked: (i) Mary Doe and Jane Doe were able to enter and exit the Tate Brothers' residence without issue during all relevant times (Compl. at 35); Defendant Mary Doe, looking for excitement, was convinced to go along with Jane Doe's conspiracy to accuse the Tate Brothers of human trafficking and other crimes (Compl. at 84); Defendant Mary Doe plotted their conspiracy in a private chat with Jane Doe (Compl. at 85); Defendant Mary Doe said "Okay I will think about [how to ask the Tate brothers for money and] like what to say [to obtain money from them by false pretenses] (Compl. at 85); "Just play it cool" (describing one of many overt acts Defendant Mary Doe took in conversation with Jane Doe to encourage her conspiracy to steal money against the Tate brothers) (Compl. at 86); "let's email Netflix" (Defendant Mary Doe's description of her and her co-conspirator's "Oscar"-worthy performance) (Compl. at 87); two weeks after making the fantastical accusations of human trafficking and other crimes of moral turpitude against the Tate brothers, Defendant Mary Doe and Jane Doe were vacationing on the French Riviera "mentally preparing for [their] upcoming adventure" (Compl. at 103); Defendant Mary Doe was fully aware that in alleging human trafficking to the U.S. Embassy, there was a substantial certainty that the Tate brothers would be arrested, detained, and confined as a direct result of such allegations (Compl. at 129).

6

Additionally, the Complaint meets Fed. R. Civ. P.'s 12(b)(6) pleading standard to establish sufficient facts to establish jurisdiction for Jane Doe's, Mary Doe's co-conspirator, in the state of Florida.  These facts include but are not limited to: (i) Upon information and belief, Jane Doe is a resident of the State of Florida (Compl. at 2); (ii) Jane Doe took great lengths to cause her friend and former lover, Liam Doe, whom she believed was a Marine and, in her view, someone with the requisite authority to manage allegations of human trafficking, to "call the [United States] embassy in Romania" (Compl. at 96); (iii) Jane Doe sent messages to the other defendants in this case, alleging that Doe was being held against her will and trafficked (Compl. at 84); (iv) Jane Doe tortiously interfered with the Tate brothers' business by knowingly or with reckless disregard for the truth or falsity of her statements spreading lies about the Tate brothers being human traffickers, causing untold damages to their businesses and reputations, resulting in harms such as censorship and millions of lost dollars as a direct result of those groundless allegations (Compl. at 115); (v) Jane Doe met Tristan Tate in Southern Florida at a War Room-related event, and a substantial part of the events or omissions giving rise to the claims here occurred in Florida (Compl. at 65).

Accordingly, because there is a strong basis for jurisdiction for Jane Doe, Defendant Mary Doe's co-conspirator, under Florida's long-arm statute there is likewise a basis for jurisdiction for Mary Doe on a civil conspiracy-claim based on well-established case law.  *Wilcox v. Stout,* 637 So.2d 335, 337 (Fla. 2d DCA 1994).  Here, Plaintiffs established the prima facie elements for civil-conspiracy: (i) Defendant Mary Doe conspired with Jane Doe to intentionally inflict harm on the Tate Brothers and deceive them by false pretenses (Compl. at 137); (ii) Defendant Mary Doe took an overt act in furtherance of their conspiracy by outlining a systematic plot to deceive Andrew Tate to steal money and, upon information and belief, potentially other property from him (Compl. at 138); (iii) the conspiracy inflicted significant emotional distress upon the Tate brothers; the brothers also suffered lost property and their brand and reputation have been seriously damaged from the conspiracy (Compl. at 139).

Defendants incorrectly argue that "any injury that flowed from such imprisonment would have also occurred in Romania, not Florida." Dkt. 52 at 7.  However, this overlooks critical facts in our Complaint, which establish that the Tate brothers were "international businessmen" with a global reputation – and business affiliations in various countries, including Florida, where Andrew Tate first met Jane Doe.  Compl. at 23.  Moreover, once they were falsely accused of human trafficking, their social media accounts – including Twitter, Instagram, Facebook, and YouTube –

7

were censored, severely undermining their businesses opportunities, revenue streams, and damaging business contacts and relationships within the state of Florida. *Id*.

Moreover, the argument that Plaintiffs did not cite Florida's long-arm statute is immaterial to pleading a successful jurisdiction claim under Florida's long-arm statute, sec. 48.193, which merely requires a showing of an individual "[c]ommitting a tortious act within this state," which has already been pleaded and reiterated in this motion based on Mary Doe's involvement in the conspiracy, wherein her co-conspirator has personal jurisdiction in Florida, as well as her tortious interference with the Tate brothers' contractual and business relations within Florida. Fla. Stat. Ann. § 48.193(2) (West). In *Caiazzo v. Am. Royal Arts Corp.*, the court held that Florida's long-arm statute has two requirements: a showing of both specific and general jurisdiction. 73 So. 3d 245, 250 (Fla. Dist. Ct. App. 2011) ("Section 48.193, Florida Statutes, is Florida's long-arm statute and addresses both specific and general jurisdiction. The long-arm statute 'bestows broad jurisdiction on Florida courts'") (For the purposes of general jurisdiction, Florida courts "have held 'substantial and not isolated' [activity under § 48.193(2), Fla. Stat. (2007)] to mean 'continuous and systematic general business contact' with Florida." See, e.g., *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999); *Am. Overseas Marine Corp. v. Patterson*, 632 So.2d 1124, 1128 (Fla. 1st DCA 1994).

Critically, and of importance to this motion, nowhere in the statute, as Defendant bizarrely alleges, is stipulated a requirement to refer, cite, or otherwise "demonstrate" the statute verbatim. Dkt. 52 at 7. What is demonstrated, however, are sufficient facts, both aforementioned and within the Complaint, to bring a viable claim under the statute for both specific and general jurisdiction, on the basis of a civil conspiracy claim. Compl. 137-138.

Although Mary Doe does not have a physical presence within Florida, this does not necessarily preclude a finding of personal jurisdiction under subparagraph 2. *See Dean v. Johns*, 789 So. 2d 1072, 1076 (Fla. 1st DCA 2001) ("Florida courts have consistently held that physical presence within Florida is not a requirement for personal jurisdiction."). For example, courts have recognized that nonresident defendants can be subject to Florida's jurisdiction when they make tortious communications into Florida. *See Wendt*, 822 So. 2d at 1260 (holding that a nonresident defendant can commit a tortious act in Florida under the long-arm statute through "telephonic, electronic, or written communications" into Florida). Finally, Plaintiffs are prepared to ask the appropriate court for leave to amend the complaint to add additional claims of Defamation against

8

Jane Doe and Mary Doe, which also includes a new conspiracy to defame the Plaintiffs, which is clearly provable by the text messages. Plaintiffs cannot properly apply to this court to amend the complaint, without availing itself to jurisdiction that Plaintiffs are actively contesting. Also, amending the complaint to add reference to the long arm statute would not be futile to correct any such oversight.

## II.     The Exercise of Personal Jurisdiction Over Mary Doe Would Be Consistent With the Due Process Clause of the Fourteenth Amendment and not Violate Due Process nor Offend Traditional Notions of Fair Play and Substantial Justice

The Eleventh Circuit applies a three part test to determine whether an exercise of specific jurisdiction affords due process: (1) the court "consider[s] whether the plaintiffs have established that their claims 'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2) "whether the plaintiffs have demonstrated that the defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state"; and (3) if the first two prongs are met, then "whether the defendant has 'ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.' " *Waite v. All Acquisition Corp*., 901 F.3d 1307, 1312 (11th Cir. 2018). *Basulto v. Netflix, Inc.*, No. 22-21796-CIV, 2023 WL 4014741, at *7 (S.D. Fla. May 25, 2023), report and recommendation adopted, No. 22-21796-CIV, 2023 WL 5271335 (S.D. Fla. Aug. 16, 2023).

Under a well-developed body of precedent, "each conspirator is liable for and bound by the act and declaration of each and all of the conspirators done or made in furtherance of the conspiracy even if not present at the time." *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. 2d DCA 1994). It follows that "acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy and that personal jurisdiction over a nonresident coconspirator may be exercised even absent sufficient personal minimum contacts with the forum if those contacts are supplied by another." 21 C.J.S. Courts § 63 (2021). Accordingly, "the conspiracy theory of personal jurisdiction is viewed as consistent with the requirements of due process." Id. *See Also Basulto* No. 22-21796-CIV, 2023 WL 5271335 (S.D. Fla. Aug. 16, 2023).

To analyze this factor, the court must look to the "'affiliation between the forum and the underlying controversy,' focusing on any 'activity or ... occurrence that [took] place in the forum State.' " *Waite*, 901 F.3d at 1314 (quoting *Bristol-Myers Squibb Co. v. Superior Court*, —— U.S. ——, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017)) (alteration in original). The Eleventh Circuit

has held that "a tort 'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort. Id. (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009)).

Under *Licciardello v. Lovelady*, the Eleventh Circuit identified the following factors that courts must consider even "where a defendant has purposefully established constitutionally significant contacts within the forum state." 544 F.3d 1280, 1284 (11th Cir. 2008). These factors are: "the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Id.* citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

As already established, and contrary to Defendant's claims, Plaintiffs have plead sufficient facts to show that Defendant's action arises out of or relates to at least one of the Defendant's contacts with the forum state. Specifically, this was a conspiracy between Defendant and Jane Doe, a Palm Beach County, Florida resident, with extensive contacts and history in the state of Florida. Compl. at 2. It was in Miami, Florida where Jane Doe first met Tristan Tate in late 2021, at a business conference where they exchanged numbers, spent a considerable amount of time together, and had sexual relations. Compl. at 43. Furthermore, in the ensuing months, Tristan Tate directed all messages via WhatsApp to Jane Doe into the state of Florida. Compl. at 66. Critically, Florida is also the forum where Jane Doe directed her defamatory statements, both to Liam Doe, a Florida resident, and her parents, June and John Doe, likewise Florida residents. Compl. at 3-4, 6. As previously stated, Florida's long-arm statute only requires that one member of a conspiracy have residency in the state of Florida, or have directed tortious activity into Florida, in order for Florida courts to assert a claim of jurisdiction over all other non-resident participants. See *Wilcox v. Stout*, *supra* at 336. Jane Doe was a Florida resident at the time – indeed, she flew from Palm Beach International Airport to Bucharest, Romania (Compl. at 69). Furthermore, the civil conspiracy resulted in a tortious act in Florida – namely, defamatory statements and lost contacts to put on War Room-affiliated business events, to say nothing of reputation and other economic costs localized to Florida, is more than sufficient grounds for a showing that Plaintiffs' claims arise out of or relate to one of the Defendant's contacts with Florida.

Second, Defendant purposefully availed herself of the privilege of conducting activities within Florida by conspiring with Jane Doe, a Florida resident, to deceive – and steal – using false

10

pretenses the Tate brothers of money and other valuable items. Compl. at 84. There are two different tests courts apply to make a determination of whether a defendant has purposely availed himself of the privilege of conducting activities in the jurisdiction:

First, "[u]nder the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state."9 Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1356 (11th Cir. 2013). "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.' " Id. (quoting Lovelady, 544 F.3d at 1285-86, 1287-88). Second, using the traditional purposeful availment analysis, the court will "assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being hailed into court in the forum." Id. at 1357. If a plaintiff can establish that a non-resident defendant's actions satisfy the first two elements, then the burden shifts to the defendant to make a compelling case that being hailed into the forum court would violate traditional notions of fair play and substantial justice. Waite, 901 F.3d at 1313.

As stated above, here the result of this conspiracy cost the Tate brothers millions of dollars, harming their reputations worldwide and limiting their social media outreach. Compl. at 23. Previously, the Plaintiffs used their social media contacts to facilitate events, such as the War Room-related Miami event where Tristan Tate first met Jane Doe in late 2021, in the state of Florida. Compl. at 43. However, as a direct consequence of Defendant Mary Doe's conspiracy, all those contacts were lost because the Tate brothers lost their social media platforms, and were later incarcerated and put under house arrest with limited to no communications with the outside world. Compl. at 107. This interrupted Florida business, and continues to meaningfully interfere with business contacts in the state of Florida, where Plaintiffs routinely used to host major events. Compl. at 43. Accordingly, Plaintiffs have met the burden of proving that Defendant had purposefully availed itself of Florida by joining a conspiracy with a Florida resident, with significant Florida contacts, and which caused tortious activity against the Plaintiffs that resulted in great damages within Florida.

Finally, over and against Defendant's arguments, this Court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice – in fact, the opposite is true.  If this court were not to find jurisdiction in the state of Florida, it is difficult to comprehend where else the Tate brothers could bring a defamation lawsuit, as is their right as American citizens, to seek justice and be made whole again.  Mary Doe joined a conspiracy that resulted in millions in damages, incarceration, wrongful arrest and detention, and a severe reputation hit with global ramifications.  The conspiracy involved a Florida resident, with significant Florida contacts, who directed her defamatory statements to multiple parties within the state of Florida.

Defendants wrongly assert that, on balance, the factors from *Licciardello* favor Defendants over Plaintiffs.  *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008).  At least three of these factors decisively favor Plaintiffs over Defendant: (i) the forum's interest in adjudicating the dispute, (ii) the plaintiff's interest in obtaining convenient and effective relief, and (iii) the judicial system's interest in resolving the dispute.  The only other factor that may favor Defendant here, the burden on the defendant, is outweighed by the other three.  First, Florida has an interest in adjudicating the dispute because a substantial part of the acts or omissions underlying these claims occurred or were directed to the state of Florida: four of the five named defendants are Florida residents (Compl. at 2-4, 6); Jane Doe met Tristan Tate in Miami (Compl. at 43); upon information and belief, Jane Doe was a resident of Florida at the time the events giving rise to these claims took place, and still is to the best of Plaintiffs knowledge (Compl. at 69); service, to the extent it was possible, was effected in Florida. DE 31, Ex. D; the co-conspiracy involved a Florida resident and resulted in tortious activity directed into Florida, which falls under Florida's long-arm statute, sec. 48.193, among a litany of other salient facts.  Second, Plaintiffs, who are United States citizens albeit stateless, emphatically have an interest in obtaining convenient and effective relief within the state of Florida because the defamatory statements alleged by Liam Doe, John Doe, and June Doe came out of Florida, and provided the basis for their subsequent arrest, incarceration, wrongful detainment, and millions of lost economic damages (Compl. at 24).  Third, Florida's judicial system has an interest in resolving the dispute there, because that is where the overwhelming majority of evidence is located, where the majority of Defendants reside, where a significant amount of the acts or omissions giving rise to this lawsuit occurred, where the tortious activity was directed, and where the Plaintiffs maintain significant business affiliations and other meaningful contracts.  To deny an assertion of jurisdiction here would gravely offend traditional notions of

fair play and substantial justice.  Therefore, Plaintiffs have obvious and strong interests to be redressed in the state of Florida, and for reasons aforementioned, courts should find that the exercise of specific jurisdiction here affords due process under the Fourteenth Amendment

**III.     Plaintiffs' Claim for False Imprisonment Sufficiently Satisfies the Minimum Plausibility Standard**

Under Florida law, to establish a claim for false imprisonment, the plaintiff must establish: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' ... 4) which is unreasonable and unwarranted under the circumstances."  *Archer v. City of Winter Haven*, 846 F. App'x 759, 763 (11th Cir. 2021). Moreover, the Florida Supreme Court has held that "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Id* citing *Johnson*, 19 So. 2d at 700.

Defendant Mary Doe argues that because Romanian judges of the Bucharest Court of Appeal ruled against extending their house arrest in early July, that fact alone establishes that the claim has no merit.  Dkt. 52 at 13.  But this is patently untrue.  First, Mary Doe conveniently fails to point out that the July decision not to extend the house arrest was so contentious that a third judge had to be brought in for an extraordinarily rare tie-breaking vote.  Compl. 106 at fn. 44. Furthermore, Mary Doe also conveniently leaves out the fact that just one month after that incredibly contentious decision was made, the Tate brothers' house arrest was in fact, lifted. Since then, they have been permitted to travel beyond just Bucharest, now to the whole country of Romania, until attorneys for Defendants held a press conference in Romania, where they lied to the press. The court of appeals reversed to allow the previous travel around Bucharest.  Mary Doe also conveniently leaves out the myriad facts pled in our Complaint that proves the Tate brothers were unlawfully detained, such as the all-important fact that while they were incarcerated and wrongfully detained, at no point had the Tate brothers been charged with the felony of human trafficking in Romania, or any other jurisdiction anywhere in the world.  Compl. at 101.

To this day, the charges against the Tate brothers by Romanian authorities are based entirely on groundless authority.  In any event, the Romanian indictment has not been included as part of this civil claim, and hence should not be considered for going beyond the four corners of the Complaint.  *Newberry Square Fla. Laundromat, LLC*, supra at 589 (Fla. 1st DCA 2020)

("Importantly, the Court's review cannot exceed the Complaint's four corners and exhibits.") See also *Hewett-Kier Constr., Inc. v. Lemuel Ramos & Assocs.*, Inc., 775 So. 2d 373, 375 (Fla. 4th DCA 2000) ("Where a motion to dismiss rests on facts outside the scope of the allegations contained in the complaint, the trial court commits reversible error in dismissing the complaint based on those extraneous matters."). Make no mistake: Defendant Mary Doe's illegal swatting of Plaintiffs resulted in their unlawful detention and deprivation of liberty. A direct result of the Defendant's illegal tortious act and premeditated lies to influence a police investigation and procure confinement of the Plaintiffs.

Congress has defined swatting as "the use of the telephone system, or any other means of communication, to knowingly make a false report that a person or persons are in imminent danger of serious bodily injury or death, and/or that a criminal offense has been committed, with the intent to trigger a response by a law enforcement agency."[6]

According to the Department of Justice, swatting implicates Federal interests,[7] and the DOJ has successfully prosecuted swatters nationwide. *See*, e.g., *United States v. Tollis*, No. 3:15-cr-00110 (D. Conn. 2015); *United States v. Neff*, No. 3:11-cr-00152 (N.D. Tex. 2013); United States v. Hanshaw, No. 4:13-CR40018 (D. Mass. 2013); *United States v. Rosoff*, No. 3:07-cr-00196 (N.D. Tex. 2008). Swatting scenarios can vary greatly; consequently, charging options are highly fact-dependent. In most cases, swatting violates the interstate threats statutes and/or the hoax statute. *See* 18 U.S.C. §§ 875, 844(e), 1038 (2015).

18 U.S.C. § 1038 criminalizes false information and hoaxes: "Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place" that would constitute a violation of certain other statutes. Violations of section 1038 carry up to 5 years of imprisonment, up to 20 years imprisonment if serious bodily injury results, and up to life imprisonment if death results. Swatting is classified as a third-degree felony in Florida, punishable by up to 5 years in prison and civil fines. Swatting is a first-degree felony, punishable by up to 30 years in prison in more serious cases.

---

[6] See H.R. 2031, Anti-Swatting Act of 2015 (August 4, 2016), https://www.cbo.gov/publication/51868.

[7] See United States Attorney's Bulletin: Cyber Misbehavior: Investigating and Prosecuting "Swatting" Crimes (64 Cyber Misbehavior 1) (May 2016), https://www.justice.gov/usao/file/851856/download.

Our Complaint establishes at the length that Defendant Mary Doe conspired with Jane Doe to "call the [United States] embassy in Romania" (Compl. at 96). Our Complaint also demonstrates that Defendant Mary Doe sent messages to another defendant in this case, and encouraged to report that they were both being held against their wills and trafficked. The reasonable inference here is simple. Defendant Mary Doe conspired with Jane Doe to contact Jane Doe's loved ones and someone she believed to be associated with the US Government. Multiple conversations took place regarding contacting the United States Embassy to rescue Defendant Mary Doe from a fictional human trafficking hostage situation. The evidence proffered in our Complaint clearly shows that Defendant Mary Doe and Defendant Jane Doe were always free to leave. Therefore, Defendant Mary Doe intentionally and wrongfully weaponized the United States Government and its partners in Romanian Law Enforcement against Plaintiffs for an illegal purpose.

The United States Government and its partners in Romanian Law Enforcement acted on fraudulent emergency intelligence that originated with Defendant Doe. Plaintiffs were swatted on (April 12, 2022 (Compl. at 100)), when a fully armed Romanian Swat Team descended upon the home rented by Iasmina Pencov and Beatrice Anghel and then the home owned by the Tate Brothers. The Plaintiffs' lives were put at grave risk during this event, as well as the lives of Iasmina Pencov and Beatrice Anghel who have detailed in their affidavits that they are not victims of human trafficking or any other crime DE 31-4, Ex. H and Ex. I. The Plaintiffs and innocent bystanders are lucky that they were not shot or killed during the Romanian Swat Team's raid. Cash and assets totaling approximately five million dollars were wrongfully seized from the Plaintiffs' Estate and is now estimated to be over twelve million dollars in seized assets from the Plaintiffs' Estate. The Plaintiffs were jailed and then imprisoned without due process. The Plaintiffs spent extended periods in solitary confinement in squalid, inhumane conditions during the pendency of their incarceration. Next, they were jailed under house arrest and remain to this day on some form of restricted mobility. The false allegations, subsequent swatting, corresponding arrest, wrongful incarceration, and current deprivation of the Plaintiffs' liberty are clearly against their will. Plaintiffs have suffered personal and professional damages as a result.

The imminent threat of harm to Plaintiffs' professional and business lives is ongoing. For instance, Defendant Mary Doe initially conspired with friends to effectuate her corrupt purpose. She swore to DIICOT that her allegations were true and then later testified to the veracity of her fraudulent accusations in a Romanian Court affidavit, where she encouraged Plaintiffs'

15

incarceration. Plaintiffs have recently obtained an unofficial translation of Mary Doe's sworn statement to police, which includes false statements regarding human trafficking and asking the Romanian government for €200,000 that she was unable to obtain in her conspiracy with Jane Doe. Plaintiffs are working to get a certified translation and will provide to the court, by way of Notice of Filing . It is no coincidence that Jane Doe and Mary Doe used the same terminology to fabricate their stories in furtherance of their conspiracy, which they gave to the Romanian authorities. The fact that Mary Doe asked the Romanian authorities for the same amount of money that Mary Doe and Jane Doe tried to obtain from Andrew Tate is completely indicative of a grand premeditated conspiracy between the two to obtain money when they were denied by Andrew Tate.

Defendant further claims that "even if the Tates' detention met the elements of a false imprisonment claim, they have failed to establish that their detention was the result of any action by Defendant Mary Doe.  Dkt. 52 at 13.  Further, Defendant Mary Doe asserts that she did not directly cause the Plaintiffs' arrest, which she claims "defies logic," because, citing *Pokorny*, "[a] citizen does not 'indirectly procure' a detention simply by providing information to law enforcement that leads to detention."  382 So.2d 678, 682 (Fla. 1980).  Dkt. 52 at 13. This is an unacceptable misapplication of both the facts and law.  As already discussed above and elaborated in the Complaint, the Tate Brothers "were unlawfully incarcerated and wrongfully detained for months as a direct result of the human trafficking and baseless allegations lodged against them by Defendant Mary Doe and Jane Doe and disseminated by the other Defendants."  Compl. at 128. The Tate Brothers were first swatted, then imprisoned without due process where they spent extended periods in solitary confinement in squalid conditions.  Next, they were jailed, then put on house arrest, and remain to this day on some form of restricted mobility as a direct result of Defendant Doe's allegations. This chain of events is easily proven by the multitude of Defendant Mary Doe's text messages cited in our Complaint: "You are a good actress" (Compl. at 86); "for now change my name in your phone" (Id.); "Just play it cool. Like you don't know anything. Play dumb." (Id.); "Let's email Netflix". (Id. at 87). At some point, Defendant Mary Doe attempts to backtrack on her claims of human trafficking, — but the gun had been fired; the bullet left the chamber, and the damage was already done.

Defendant Mary Doe clearly lied to at least law enforcement and a Romanian judge, and with malicious purpose.  She purposefully influenced authorities to obtain the arrest and incarceration of Andrew Tate and Tristan Tate.  Lying to law enforcement and courts of law is in

no way covered under qualified immunity or any other immunity.  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (denying qualified immunity where defendants forwarded a known false confession to prosecutors).  Unlike Defendants who have "not seen the evidence,"[8] Plaintiffs are in possession of copious false, malicious, and downright ridiculous statements made by the Defendant, Jane Doe.[9]

### IV.   The Plaintiffs have sufficiently pleaded Intentional Infliction of Emotional Distress.

A claim for IIED consists of the following elements: "(1) the wrongdoer's conduct was intentional or reckless; ... (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Williams v. City of Minneola*, 619 So.2d 983, 986 (Fla. 5th Dist.Ct.App.1993); *See Also Hart v. U.S.*, 894 F.2d 1539, 1548 (11th Cir.1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla.1985)). Whether conduct is sufficiently "outrageous" to state a claim for IIED is a question of law for the Court to decide. *See Medina v. United Christian Evangelistic Ass'n*, No. 08–22111–CV–Cooke, 2009 WL 653857, at *4, 2009 U.S. Dist. Lexis 19515, at *12 (S.D.Fla. Mar. 9, 2009); *Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 4th Dist.Ct.App.1985).

The Complaint clearly shows that Defendant Mary Doe's conduct was intentional and reckless. The Complaint demonstrates through her statements and video evidence that Defendant Mary Doe was free to leave the Tate Estate at any time.  The evidence shows that she conspired to help Jane Doe publish messages to Florida stating that they were being human trafficked, resulting in the Plaintiffs being swatted and incarcerated. The evidence further shows that she lied in a sworn court proceeding. As stated above, Defense Counsel recently held a press conference in Romania reiterating Defendant Mary Doe's litany of false allegations, resulting in new restrictions for the Plaintiffs.   Defendant Mary Doe's actions were and continue to be purposeful, malicious, reckless—and ongoing.

---

[8] Ms, Roth stating to the Romanian media "we have not seen the evidence." *See* https://drive.google.com/file/d/1lZvJgmO17ec4A8KrQWALHeYMcSny6Cjz/view?usp=drive_link

[9] These additional statements are intended to be included in an Amended Complaint when it is appropriate to seek leave of court. However, it is not the purpose of a complaint to try and outline the entire case and facts, but only facts that would make only such cause of actions plausible.

Defendant Mary Doe's conduct is outrageous and extreme to the point of going beyond all possible bounds of decency. Her conduct is atrocious and utterly intolerable in a civilized community. It is a fact that Black men are disproportionately convicted after being accused by women of crimes involving sexual advances and threats of violence. [10] Andrew and Tristan Tate are of African American descent and falsely accused of heinous crimes they did not commit by a woman with a history of perjuring herself in court. [11] Two men who have vociferously proclaimed their innocence since the time of their arrest. The National Registry of Exonerations contains throngs of men who have suffered heartbreaking loss stemming from the kind of false allegations and culturally incompetent arguments that have criminalized minority speech patterns and play on age-old stereotypes.  The kind of filth that's been levied against Andrew and Tristan Tate.[12]

Defendant Mary Doe has gone to great lengths to silence Plaintiffs' voices because she fully realizes that any reasonable Floridian would arouse their resentment against her and exclaim, "This is Outrageous!" after hearing these facts of this Complaint openly recited. *Merrick v. Radisson Hotels Int'l, Inc.*, 06–cv–01591–T–24TGW (SCB), 2007 WL 1576361, at *4 (M.D.Fla. May 30, 2007); *See Also McCarson*, 467 So.2d at 278–79. Defendant Mary Doe, again, tries to use impermissible news articles and interviews to claim that the Plaintiffs did not suffer severe emotional distress.  Dkt. 52 at 17.  Again, this is not proper for the court to take into consideration and would be properly reserved for a jury.  *Hewett-Kier Constr., Inc. v. Lemuel Ramos & Assocs., Inc.*, 775 So. 2d 373, 375 (Fla. 4th DCA 2000) ("Where a motion to dismiss rests on facts outside the scope of the allegations contained in the complaint, the trial court commits reversible error in dismissing the complaint based on those extraneous matters.")

Defendant Mary Doe has irreparably tarnished Plaintiffs' achievements, ruined their professional reputations, and caused them permanent physical and emotional harm because (a) they have been stripped of their good standing in their community and will forever be associated

---

[10] See Samuel Gross, et al., *Race and Wrongful Convictions in the United States 2022*, National Registry of Exonerations (September 2022) ("The number of exonerations we consider has grown by almost 70%."), https://www.law.umich.edu/special/exoneration/Documents/Race%20Report%20Preview.pdf.

[11] See Daniele Selby, From "Emmett Till to Pervis Payne — Black Men in America Are Still Killed for Crimes They Didn't Commit," Innocence Project (July 25, 2020), https://innocenceproject.org/emmett-till-birthday-pervis-payne-innocent-black-men-slavery-racism/.

[12] See:  The University of Michigan's National Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx (last visited Oct. 23, 2023).

with human trafficking. (b) A fully armed swat team raided their home, subjecting them to the risk of serious violence and death. (c) Assets and cash worth an estimated five million dollars were taken from them. (d) They were incarcerated in squalid and inhumane conditions in a dangerous prison. (e) They were subjected to long periods of solitary confinement. (f) Each of them witnessed all the above things happen to their brother and best friend, which in turn has exacerbated and compounded their physiological, psychological, and emotional suffering. It is entirely reasonable to state that the only thing that could have caused them more harm would have been watching their brother seriously injured while being swatted or killed while in jail. (g) The harm they are enduring is ongoing.

## V. The Complaint Establishes the Prima Facie Elements for Negligent Infliction of Emotional Distress

Under Florida law, a plaintiff must show four elements to satisfy a claim for NIED: (i) the plaintiff must suffer a discernible physical injury; (ii) the psychological trauma must cause the physical injury; (iii) the plaintiff must be involved in the event causing the negligent injury; and (iv) the plaintiff must have a close personal relationship to the directly injured person. *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 2004).

For reasons stated in the IIED section, Andrew and Tristan Tate both suffered from a number of physical injuries caused by Defendant Doe's actions. Defendant Mary Doe's claim that Plaintiffs' NIED claim fails because the "Tates did not 'suffer a physical injury,'" as required by the "impact rule" (Dkt. 52 at 20) — is flatly wrong. Our Complaint alleges more than just mental anguish or psychological trauma – but physical symptoms directly caused by the psychological harm Defendant Doe inflicted: severe chest pain, chronic insomnia, breathlessness, weight loss, and various other severe infections affecting vital organs because of the squalid conditions they endured while incarcerated together and that they observed each other enduring. Compl. at 144. Defendant Mary Doe's false allegations of human trafficking were the actual and proximate cause of their incarceration and physical injuries. Therefore, the "impact" requirement was met.

Defendant's claim that "Plaintiffs fail to allege with any specificity, exactly what conduct by Mary Doe allegedly caused 'discernible physical injury from the psychological trauma' of being imprisoned by the Romania government" (Dkt. 52 at 20) is utterly ridiculous. Simply put,

Defendant Doe is detached from reality if she sincerely believes lodging false allegations of human trafficking constitutes a failure "to allege with any specificity."

The Defendants are trying to force the Plaintiffs to try their entire case in the complaint and not simply plead facts sufficient to establish a cause of action. Defendants try to bolster their positions by using red herrings, such as news articles and other extraneous materials clearly outside the four corners of this complaint, to tempt this Honorable Court to decide issues properly reserved for a trier of fact.

## CONCLUSION

Defendant Mary Doe's Motion to Dismiss is rife with threadbare factual allegations, conclusory statements, and violations of the Local Rules. If this Court does not remand this matter and even considers this Motion to Dismiss, Plaintiffs are prepared, should the Court deem it necessary, to add more information supporting the cause of action in the Amended Complaint. Plaintiffs are also prepared to add additional causes of action through a motion for leave to amend the Amended Complaint. However, the Plaintiffs have not moved, nor should this be construed as the Plaintiffs asking this Honorable Court for leave to amend the Amend Complaint.

When read in a light most favorable to the Plaintiffs, the Complaint clearly demonstrates that Defendant Mary Doe harmed the Plaintiffs in a way that entitles the Plaintiffs to damages. Defendant Mary Doe's actions and the parade of horribles that followed from them, including, but not limited to, the swatting, arrest, incarceration, and involuntary deprivation of the Plaintiffs' liberty, have been sufficiently pleaded to satisfy the plausibility requirement for each tort alleged. Necessitating, as a matter of law, the Complaint's survival regarding Defendant Mary Doe's Motion to Dismiss.

WHEREFORE, Plaintiffs ask this Honorable Court to deny Defendant, Mary Doe's Motion to Dismiss and for any other relief this Court deems just and proper.

Respectfully submitted this 24th day of October 2023.

/s/ Thomas Maniotis, Esq.                    s/ Joseph D. McBride, Esq.
Thomas Maniotis, Esq.                        Joseph D. McBride, Esq.
Florida Bar No. 122414                       NYS Bar No. 5445879 *Pro Hac Vice*
Equity Legal, PLLC                           THE MCBRIDE LAW FIRM, PLLC
5201 Blue Lagoon Drive, Floor 8              99 Park Avenue, 6th Floor
Miami, FL 33126                              New York, NY 10016
p:321-313-8642                               p: (917) 757-9537
e: tamaniots@equitylegal.net                 e: jmcbride@mcbridelawnyc.com
*Attorneys for Plaintiffs:*                  *Attorneys for Plaintiffs:*
*Andrew & Tristan Tate*                      *Andrew & Tristan Tate*

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3), I hereby certify that I conferred with counsel for Defendants. Defendants oppose the relief sought in this Motion and Reply.

/s/ Thomas Maniotis, Esq.
Thomas Maniotis, Esq.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 24th, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will, on the same day, electronically serve true and exact electronic copies on the persons below to their stated email addresses.

/s/ Thomas Maniotis, Esq.
Thomas Maniotis, Esq.

**SERVICE LIST:**

Danielle Marie Bianculli
National Center on Sexual Exploitation
1201 F Street NW
Washington, DC 20004
202-393-7245
Email: dpinter@ncoselaw.org
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Sofie Tiffany Bayer
Waugh Grant
201 E. Pine St
Suite 315
Orlando, FL 32801
3218006008
Fax: 8442060245
Email: sbayer@waugh.legal
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Benjamin W. Bull
National Center on Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: bbull@ncose.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Christen M. Price
National Center on Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: cprice@ncoselaw.org
PRO HAC VICE
ATTORNEY TO BE NOTICED

Mary Norberg
Waugh Grant, PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
(321) 800-6008
Email: mnorberg@waughgrant.com

ATTORNEY TO BE NOTICED

Peter A. Gentala
National Center of Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: pgentala@ncoselaw.org
PRO HAC VICE
ATTORNEY TO BE NOTICED

Victoria Hirsch
National Center on Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: vhirsch@ncoselaw.org
PRO HAC VICE
ATTORNEY TO BE NOTICED

Christian W Waugh
Waugh PLLC
201 E. Pine Street
Suite 315
Orlando, FL 32801
321-800-6008
Email: cwaugh@waughgrant.com
ATTORNEY TO BE NOTICED

Jillian Patricia Roth
Laffey, Bucci, Kent, LLP
1100 Ludlow St.
Suite 300
Philadelphia, PA 19107
2153999255
Email: jroth@lbk-law.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED