**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA WEST PALM BEACH
DIVISION
Case No.: 9:23-cv-81150-RLR**

ANDREW TATE AND TRISTAN TATE,

     Plaintiffs

vs.

JANE DOE, et al.,

     Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS COMPLAINT AND EXHIBITS

     Plaintiffs, ANDREW TATE AND TRISTAN TATE, by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure as well as the Local Rules for the Southern District of Florida, file this Response in Opposition to Defendants' Motion to Strike ("Motion to Strike") and states.

### A.  INTRODUCTION

     Defendants' Motion to Strike: another relentless assault on the truth and law—is the latest installment in a series of frivolous filings by Defendant that grossly distort the facts of this case. The Defense claims that facts in the Amended Complaint "have no relevance to claims advanced against any Defendants." The Defense even tries to go as far as to distort the words of the Amended Complaint, in what seems to be an effort to inflame the public opinion surrounding this case.  The Defense appears to believe in this strategy so much that on October 5, 2024, in Bucharest, Romania, attorney Jillian Roth, in referring to this case, explicitly stated to the Romanian Press that: ***"The Federal Judge in the United States, in her opinion, herself, upon review of the evidence submitted, called the women victims.[1]"*** Plaintiffs know that such a statement is untrue

---

[1] Ms. Roth stating to the Romanian media "we have not seen the evidence." See
https://drive.google.com/file/d/1lZvJgmO17ec4A8KrQWALHeYMcSny6Cjz/view?usp=drive_link

and contradicts this Court's order calling the Defendants "alleged victims." However, we must point out that such statements undermine and disparage the judicial process.

It is a fact that Black men are disproportionately convicted after being accused by women of crimes involving sexual advances and threats of violence.[2]  Andrew and Tristan Tate are two men of African American descent who have been falsely accused of crimes they did not commit by a woman with a history of perjuring herself. Two men who have vociferously proclaimed their innocence since the time of their arrest. The National Registry of Exonerations contains throngs of men who have suffered heartbreaking loss stemming from the kind of false allegations that have been levied against Andrew and Tristan Tate.[3]  Loss resulting from culturally incompetent arguments that criminalize minority speech patterns and play on age-old stereotypes.[4]. These tiresome, antiquated tactics deployed by defense counsel may have been effective weapons in courts of segregation, but they have no place in today's world or—this Honorable Court.

Andrew and Tristan Tate are American citizens who are the product of a broken home. They are not college-educated. Andrew is a Muslim, and Tristan is a Romanian Orthodox Christian. Each takes their respective faiths seriously.  Both brothers were born and raised in circumstances that statistically indicate that they easily could have chosen a life of crime—but did not. Plaintiffs have risen to the heights of success many people dream of attaining because they consciously decided to use the circumstances under which they were born as fuel for the fire of personal achievement. Their charitable efforts, from TATE PLEDGE alone, have helped more than one million impoverished people in over fourteen countries worldwide.[5]  Some of their online remarks may sometimes sound like Howard Stern. And their religious conversions have inspired many to give faith a chance.  None of that, or the litany of extrinsic material the defense has cited in its Motion to Dismiss, has to do with anything with the causes of action laid out within the four corners of this Complaint.

The four corners of our well-pled Complaint outline a tragic and troubling history of a troubled adult woman who weaponized the Justice System as a youth.  Indeed, society may have

---

[2] See From "Emmett Till to Pervis Payne — Black Men in America Are Still Killed for Crimes They Didn't Commit" @ https://innocenceproject.org/emmett-till-birthday-pervis-payne-innocent-black-men-slavery-racism/.
[3] See:  The University of Michigan's National Registry of Exonerations @ https://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx.
[4] See Race and Wrongful Convictions in the United States:  The number of exonerations we consider has grown by almost 70%  @ https://www.law.umich.edu/special/exoneration/Documents/Race%20Report%20Preview.pdf.
[5] See: *Tate Pledge Impact Statistics*, https://cobratate.com/pledge (last visited Oct. 23, 2023).

failed to save Defendant Doe from the harsh reality of an unfair upbringing—but that is no excuse or justification for her actions. Disadvantaged youth who exhibit patterns of criminal behavior as teenagers often receive jail sentences as adults. A disadvantaged youth may be a mitigating factor at sentencing. It is, however, no excuse or justification for torts or crimes committed by adults. Plaintiffs Complaint makes clear that Defendant Doe was an adult woman when she met Tristan Tate at a War Room event in Miami, Florida, and then solicited Tristan Tate to move to Romania, where she spent a total of six days before making a series of false reports first that resulted in a fully armed, highly trained SWAT team descending upon the Tate Estate in April of 2022.

## B. **LEGAL STANDARD**

Rule 12(f), Fed. R. Civ. P. provides that, upon motion, the Court may strike" any redundant, immaterial, impertinent or scandalous matter in any pleading." However, "[a] motion to strike will 'usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.' *Al-Rayes v. Willingham*, 2007 WL 788401, at *5 (M.D. Fla. Mar. 14, 2007) (citing *Scelta v. Delicatessen Support Servs., Inc.*, 57 F.Supp.2d 1327, 1347 (M.D. Fla. 1999). Because federal judges have made it clear, in numerous opinions, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered as purely cosmetic or "time wasters", there appears to be general judicial agreement, that these motions should be denied, unless the allegations have no possible relation or logical connection to the subject matter of the underlying suit and may cause some form of significant prejudice to one or more parties. *See*. e.g., *Garcia v. Chapman*, 2012 WL 5941993, *16 (S.D. Fla. 2012); *Pessin v. Keeneland Ass'n*, 45 F.R.D. 10, 13 (E.D. Ky. 1968) ("[s]uch motions are considered as time wasters and are not favored") (emphasis added). Thus, even if "the offending matter literally is within one or more of the categories set forth in Rule 12(f)," the motion to strike should be denied "when the court believes that no prejudice could result from the challenged allegations." Id. (quoting Wright & Miller, Federal Practice & Procedure: Civil § 1382 at 443-44 (2004)). If part of the challenged material is found to be so connected with the subject matter of the suit that it might be deemed to present a question of law or fact that the district court is obligated to hear and determine, it cannot be stricken as impertinent; the allegation must be considered and its sufficiency as a defense passed upon by the court. *Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585 (W.D. Pa. 1971).

As addressed in further detail below, the scandalous nature of Defendants' conduct need not be stricken where the allegations are relevant to the claim for relief and/or provide a useful background for the parties. Liveright v. Joint Committee of Gen. Assembly of State of Tennessee, 279 F.Supp. 205, 210, 217 (M.D. Tn. 1968) (court refused to strike historical facts and derogatory newspaper articles relating to the predecessor of an investigating organization alleged to be violating the plaintiffs' First and Fourteenth Amendment rights where the allegations were relevant to the underlying issues in the case). Moreover, it is generally true that a motion to strike is not the proper procedure to place plaintiff's pleadings at issue, when a defendant disagrees with the allegations made in the complaint. Id. Finally, any doubt as to whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the nonmoving party. Garcia v. Chapman, 911 F.Supp.2d. at 1244.

### C. Defendants' Motion To Strike Should Be Denied In Its Entirety Because Paragraphs 36-42, And 44-62 And The Accompanying Exhibits A, C, D, E, F, and L, Directly Relate To The Claims And Defenses Of The Instant Litigation, Are Highly Relevant To Plaintiffs' Claims For Relief And Provide A Useful background For The Parties And Conduct Of The Defendant, Jane Doe

In the instant motion, Defendants argue that the Court should strike certain allegations in Paragraphs six, eight, twenty-four and twenty-seven, every allegation in Paragraphs eighteen to twenty-three, and all Exhibits. The Defendants make sweeping allegations that facts contained in the Amended Complaint should be stricken with throwaway conclusory statements that the fact and background are immaterial, impertinent, and scandalous. That the statements do "nothing but confuse the issues in the Complaint and Prejudice Jane Doe." (as an aside, Plaintiffs are not sure if Defendants are referring to the Complaint or the Amended Complaint, as Defendants refer to "Complaint" throughout the motion).

Particularly, the allegations made in the proposed material to be struck in the instant case (1) are relevant to the claim; (2) provide useful background for the parties and the court; and (3) may assist the court in determining difficult questions of law. *See Liveright*, 279 F.Supp. at 210, 217. The arguments made in Defendants' Motion to Strike are a ploy designed to delay these proceedings and distract the Court from Defendants' highly relevant egregious actions.

**D. Paragraphs 36-42 Directly Relate To Plaintiffs' Allegations In All Counts That Defendant's, Jane Doe, Actions Were Intentional, Willful And Unlawful And That The History Was So Long And Extensive That John Doe, June Doe, And Liam Doe Should Have Known That The Allegations Made Against The Plaintiffs Were Complete Fabrications**

Paragraph 36 begins with Jane Doe's long list of preying on both men and women, specifically addressing her horrible history of intentionally inflicting emotional distress and extorting unsuspecting victims. This is precisely the type of conduct that Plaintiffs claim – i.e., Intentional Infliction of Emotional Distress, Conspiracy, and False Imprisonment, among other intentional torts.

Specifically, paragraph 36 details men and women whose lives have been severely impacted, in a negative way, by Jane Doe. These include additional victims in both Romania and the United States. Paragraphs 37-39 detail how Defendant Doe manipulates her victims and seeks revenge on their lives when her needs are not met. This important information gives important context regarding understanding the Plaintiff's case. Jane Doe and Mary Doe conspired to obtain by false pretenses. Paragraphs 40 and 41 discuss the online aliases used by Jane Doe, which also helps the Court understand the exhibits and the fatal violent anger that Jane Doe exhibits when her needs are unmet. It further details how Jane Doe induces management relationships by using fake identities to avoid the legal consequences of her actions.

**E. Paragraphs 44 Through 62 Are Directly Related To Plaintiffs' Allegations And All Counts That The Defendant, Jane Doe, Actions Were Intentional, Willful, And Unlawful And That The History Was So Long And Extensive That John Doe, June Doe, And Liam Doe Should Have Known The Allegations Made Against The Plaintiffs Were Complete Fabrications**

Paragraph 44 introduces an ex-boyfriend of Jane Doe, Kenneth Fisher, who was manipulated and initially deceived into a relationship with Jane Doe. Mr. Fisher has filed a lawsuit against Jane Doe in the 15th judicial circuit for Palm Beach County, Florida. Jane Doe used a combination of fake identifications, excuses, lies, and dating profiles to induce Mr. Fisher into a relationship under false pretenses, demonstrating a pattern of behavior predating Defendant Doe's first interaction with Tristan Tate. The fact that Defendant Doe's tortious activity centers around prurient behavior that started at a young age is unfortunate—yet unavoidable and highly relevant.

Defendants are also moving to strike the Complaint filed by Mr. Fisher, attached to the amended complaint as exhibit A, because it contains over thirty-four instances where Jane Doe, in her own words, admitted that she is a liar or was lying. Furthermore, Mr. Fisher's complaint details extortion, intentional infliction of emotional distress, and abuse of process. In text messages, within that complaint, Jane Doe admitted to constructing "a completely false narrative." The completely false narrative was used as a basis to get a restraining order against Mr. Fisher in an official court proceeding. This goes directly to the heart of what is being claimed by the plaintiffs, wherein Jane Doe used deceit and false allegations to inflict severe emotional distress on the plaintiffs and obtain their incarceration by influencing an official police investigation.

Furthermore, detailed in these paragraphs, specifically in paragraph 47, is that Jane Doe requests extremely rough sex and other sexual gratification that may be construed as physical abuse. This is extremely important because, in a recently obtained audio recording, Jane Doe excuses her interest in Tate of choking her during sex to the Romanian Judge. In fact, Jane Doe outright accuse Tristan Tate of assaulting her by choking her during sex on one occasion. Jane Doe told the judge in Romania that "I know I know [I did not consent to being choked] because I don't like stuff like that." This, on its face is a lie according to portions of the complaint and exhibits Defendants would like to see struck to continue to conceal Jane Doe's reckless and lying behavior. This includes the affidavits concerning Tyler Hensel and Kenneth Fisher, as well as Jane Doe's own text messages included in Mr. Fisher's Complaint.

Interestingly, the defendants tried to spin paragraphs 49 through 53 that plaintiffs are blaming Jane Doe for her own alleged sexual abuse. That cannot be farther from the truth. It seems the only possible reason to twist these words into something very heinous is to inflame the court for public opinion. However, these paragraphs relating to "Jail John" are included to detail that Jane Doe lied to the prosecutors during an entirely different Florida Court proceeding by concealing the fact that she misleads the world about her age. For some background, Plaintiffs legal team interviewed multiple men who were romantically involved with Defendant Doe during that time, and all of them claim that Defendant Doe lied to them about her age.

Nowhere in the complaint have the plaintiffs alleged that Jailed John was innocent. What's relevant is the fact that Defendant Doe admits to deliberately withholding the fact that she lied to Jail John about her age when she and John first met, which, arguably, would have

been a mitigating factor during John's sentencing. Again, what's relevant is the fact that the text messages related to this event show that Defendant Doe has no reservations about lying to prosecutors or using the court system to prosecute and convict her former lovers for nefarious purposes. A pattern of behavior that predates Defendant Doe's initial meeting with Tristan Tate that is highly relevant to our allegations regarding lying to Romanian Prosecutors.

Paragraphs 54 to 55 continue to detail how Jane Doe lied to get a restraining order, as evidenced by her text messages sent to Mr. Fisher. Furthermore, the complaint continues in paragraphs 56 through 62, details regarding several men who have been lied to by Jane Doe about her age and unknowingly induced into committing the crime of statutory rape. As stated above, it is unfortunate that these facts are of a prurient nature. They are, however, of great importance because they speak to preexisting patterns of (1) trapping men into crimes and then leveraging their participation against them and (2) using false rape allegations to cover even simple white lies.  For instance, in the text messages related to Joel Frydman, Defendant Doe recklessly conjures up rape allegations to justify her presence with another man.

However, the situation with Dustin Milner is far more serious. Dustin Milner's brother and close friend were interviewed and gave statements about Defendant Doe which indicate that Defendant Doe's combination of lies, psychological trauma, and emotional distress inflicted on Dustin appear to have significantly contributed to his suicide. Their statements, which are referenced in our Complaint and memorialized in Exhibit A, are highly relevant to this lawsuit as they speak toward a pattern of Defendant Doe destroying men who have been romantically involved with her.

**F.   Exhibits A, C, D, E, F, and L are Directly Related To Plaintiffs' Allegations And All Counts That The Defendant, Jane Doe, Actions Were Intentional, Willful, And Unlawful And That The History Was So Long And Extensive That John Doe, June Doe, And Liam Doe Should Have Known The Allegations Made Against The Plaintiffs Were Complete Fabrications**

As detailed above, Exhibit A is highly relevant to this case because it details previous false allegations made against Mr. Fisher.  It also documents instances where Defendant Doe intentionally inflicted emotional distress on different men.  This exhibit displays a significant history of Defendant Doe admitting to the kind of fabrications and false allegations that speak directly to the heart of the plaintiffs' case. Messages indicating that Defendant Doe has wrongfully weaponized law enforcement and court systems before—in the same way she has

7

against Andrew and Tristan Tate. Exhibit C is a temporary injunction that was issued against Mr. Fisher due to the false statements made by Jane Doe. At the risk of beating a dead horse, the statements made within the restraining order by Jane Doe completely contradict the text messages provided.

Exhibit D is an investigator's affidavit that memorialized our investigator's interview of Jason Milner, the brother of Dustin Milner, which details how Defendant Doe previously inflicted harm on a person to the point where people close to Dustin Milner believe that Defendant Doe helped catalyze Dustin's suicide. This is the same for exhibit E, which is an investigator's affidavit memorializing the conversation with Dustin Milner's close friend, Adam Heinrich.

The allegations in Exhibits A-D are corroborated by a voicemail Defendant Doe left on Marlin Fisher's phone on April 12, 2020, where a frantic Defendant Doe states:

> "Um, hi, I am so sorry for calling…I didn't know who else to call…Honestly…I've kind of burned all my old bridges…but um…I just found out…I know this is like… the boy who cried wolf…but I just found out that…um…I shouldn't be telling you this…Dustin killed himself on Friday and um…I just wanted to say that I'm sorry for everything that I've done…I wish that I could show you…I don't know what the fuck to do…I thank you for everything that you've taught me…and I know that you have a really good heart…and…I'm so fucked up I'm sorry…I really miss you…It's my fault…I am sorry…I shouldn't have called…I hope you blocked my number so you don't get this voicemail…I don't even have anybody…I just…I am sorry that I called you…I'm sorry I love you."

This voicemail was left on Mr. Fisher's phone shortly after Defendant Doe's false allegations in a Palm Beach Court resulted in a restraining order being issued against Fisher on Doe's behalf.  Defendant Doe's reaction to Dustin Milner's suicide and the wrongs she committed against Fisher is objectively remorseful and deeply apologetic and, therefore, corroborative of Fisher's allegations against her and the idea that Defendant Doe's abuse of Milner catalyzed his suicide.[6]

Defendants seek to strike the affidavit of Mr. Joel Frydman, Exhibit F. Mr. Frydman gave an affidavit to clear his name against the false rape allegations made by Defendant Doe in text messages to Mr. Fisher. The affidavit shows that no rape or relationship of any kind took

---

[6] See Audio Link to Defendant Doe's April 12, 202 voicemail on Marlin Fisher's Phone @
https://drive.google.com/file/d/1tjqE4XxVW33POngRYRaE1ao8MZie3ZGt/view?usp=sharing

place, despite Defendant Doe's claims to the contrary. This goes directly to the type of claims involved against the plaintiffs that led to their swatting, false imprisonment, and severe emotional distress.

Exhibit L is perhaps one of the most important exhibits attached. Jane Doe made claims to the remaining authorities that the plaintiffs were human trafficking her and were forcing her to work in sexual labor. However, this cannot be further from the truth. In fact, Defendants were not forced to work at all. This is detailed in text messages between Tristan Tate and Jane Doe. Exhibit L shows Defendant Doe posting racy photographs and further evidence of how she used her social media to lure men to be able to take advantage of them in any way she sees fit.

As stated above, Defendant Doe has a long history of inflicting significant emotional distress on her victims by using the same tactics she used in this case against the plaintiffs. These challenged exhibits are highly relevant to giving the background of Jane Doe, her modus operandi, patterns of tortious behavior, and how she would, for reasons we still do not understand, destroy a person's life and reputation in the community simply because she could.

The probative value significantly outweighs any potential prejudice to Defendant Doe. In contrast, the striking of these Exhibits will unquestionably significantly prejudice the Plaintiffs because these materials speak directly to the heart of the plaintiffs' claims against Jane Doe and the other Defendants in this case.

WHEREFORE, Plaintiffs' respectfully request this Honorable Court to deny Defendants' motion to strike, and any other relief that this Court may deem just and proper.

Respectfully submitted this 24th day of October 2023,


/s/ Thomas Maniotis, Esq.                    /s/ Joseph D. McBride, Esq.
Thomas Maniotis, Esq.                        Joseph D. McBride, Esq.
Florida Bar No. 122414                       NYS Bar No. 5445879 *Pro Hac Vice*
Equity Legal, PLLC                           THE MCBRIDE LAW FIRM, PLLC
5201 Blue Lagoon Drive, Floor 8              99 Park Avenue, 6th Floor
Miami, FL 33126                              New York, NY 10016
p:321-313-8642                               p: (917) 757-9537
e: tamaniots@equitylegal.net                 e: jmcbride@mcbridelawnyc.com
*Attorneys for Plaintiffs:*                  *Attorneys for Plaintiffs:*
*Andrew & Tristan Tate*                      *Andrew & Tristan Tate*


## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3), I hereby certify that I conferred with counsel for Defendants
and no resolution could be reached.

/s/ Thomas Maniotis, Esq.
Thomas Maniotis, Esq.


## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 24, 2023, I electronically filed the foregoing with the Clerk
of the Court using the CM/ECF system, which will, on the same day, electronically serve true
and exact electronic copies on the persons below to their stated email addresses:

/s/ Thomas Maniotis, Esq.
Thomas Maniotis, Esq

10

**SERVICE LIST:**

Danielle Marie Bianculli
National Center on Sexual Exploitation
1201 F Street NW
Washington, DC 20004
202-393-7245
Email: dpinter@ncoselaw.org
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Sofie Tiffany Bayer
Waugh Grant
201 E. Pine St
Suite 315
Orlando, FL 32801
3218006008
Fax: 8442060245
Email: sbayer@waugh.legal
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Benjamin W. Bull
National Center on Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: bbull@ncose.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Christen M. Price
National Center on Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: cprice@ncoselaw.org
PRO HAC VICE
ATTORNEY TO BE NOTICED

Mary Norberg
Waugh Grant, PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
(321) 800-6008

Email: mnorberg@waughgrant.com
ATTORNEY TO BE NOTICED

Peter A. Gentala
National Center of Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: pgentala@ncoselaw.org
PRO HAC VICE
ATTORNEY TO BE NOTICED

Victoria Hirsch
National Center on Sexual Exploitation
1201 F. St., NW, Suite 200
Washington, DC 20004
202-393-7245
Email: vhirsch@ncoselaw.org
PRO HAC VICE
ATTORNEY TO BE NOTICED

Christian W Waugh
Waugh PLLC
201 E. Pine Street
Suite 315
Orlando, FL 32801
321-800-6008
Email: cwaugh@waughgrant.com
ATTORNEY TO BE NOTICED

Jillian Patricia Roth
Laffey, Bucci, Kent, LLP
1100 Ludlow St.
Suite 300
Philadelphia, PA 19107
2153999255
Email: jroth@lbk-law.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED